[940 NE2d 522, 914 NYS2d 696]

In the Matter of NEW YORK CHARTER SCHOOL ASSOCIATION et al., Respondents, v M. PATRICIA SMITH, as Commissioner of Labor, Appellant.

In the Matter of FOUNDATION FOR A GREATER OPPORTUNITY et al., Respondents, v M. PATRICIA SMITH, as Commissioner of Labor, et al., Appellants.

Argued September 13, 2010; decided October 19, 2010

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* Albany (*Zainab A. Chaudhry, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for appellants. Charter school facility projects satisfy the contract prong of the *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [1983], *affd for reasons stated below* 63 NY2d 810 [1984]) prevailing wage law test. (*Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *Matter of Pyramid Co. of Onondaga v New York State Dept. of Labor,* 223 AD2d 285; *United Bhd. of Carpenters & Joiners, Local 747 v New York State Dept. of Labor,* 291 AD2d 781; *Matter of Orens v Novello,* 99 NY2d 180; *ELRAC, Inc. v Masara,* 96 NY2d 847; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471; *United States v Craft,* 535 US 274; *Matter of Oswald N.,* 87 NY2d 98; *Matter of Stephens & Rankin v*

*Hartnett*, 160 AD2d 1201; *Matter of Sierra Telcom Servs. v Hartnett*, 174 AD2d 279.)

*Couch White, LLP*, Albany (*James J. Barriere, Michael T. Wallender* and *Nathan R. Sabourin* of counsel), for New York Charter School Association and others, respondents. Charter school facility projects do not satisfy the *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [1983], *affd for reasons stated below* 63 NY2d 810 [1984]) prevailing wage test. (*Bucci v Village of Port Chester*, 22 NY2d 195; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205; *Matter of Fineway Supermarkets v State Liq. Auth.*, 48 NY2d 464; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Brukhman v Giuliani*, 94 NY2d 387; *Varsity Tr. v Saporita*, 71 AD2d 643; *Matter of Pinkwater v Joseph*, 275 App Div 757, 300 NY 729; *Matter of Twin State CCS Corp. v Roberts*, 72 NY2d 897; *Maybee v State of New York*, 4 NY3d 415; *United Bhd. of Carpenters & Joiners, Local 747 v New York State Dept. of Labor*, 291 AD2d 781.)

*Sonnenschein Nath & Rosenthal LLP*, New York City (*Richard M. Zuckerman, Peter D. Wolfson* and *Oscar N. Pinkas* of counsel), for Foundation for a Greater Opportunity and others, respondents. The prevailing wage laws do not apply to construction, renovation, repair and maintenance of the facilities of charter schools. (*Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Jones v Bill*, 10 NY3d 550; *Matter of Lantry v State of New York*, 6 NY3d 49; *Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597; *Consedine v Portville Cent. School Dist.*, 12 NY3d 286; *Davidson Pipe Supply Co. v Wyoming County Indus. Dev. Agency*, 85 NY2d 281; *Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120; *Matter of Stephens & Rankin v Hartnett*, 160 AD2d 1201; *Matter of Sierra Telcom Servs. v Hartnett*, 174 AD2d 279, 79 NY2d 1039, 507 US 972.)

*Rivera Driscoll & Carey, LLP*, Albany (*Patrick E. Brown, Justin E. Driscoll* and *Gilbert L. Carey* of counsel), for New York State Building & Construction Trades Council, AFL-CIO, amicus curiae. I. Article I, § 17 of the New York State Constitution requires prevailing wages to be paid for construction work on buildings paid for, at least in part, with public funds, and which provide essential public functions. (*Brukhman v Giuliani*, 94 NY2d 387; *Campbell v City of New York*, 244 NY 317;

*Long Is. R.R. Co. v Department of Labor of State of N.Y.*, 138 Misc 612, 256 NY 498; *Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532, 63 NY2d 810; *People v Crane*, 214 NY 154.) II. The Appellate Division erroneously held that the prevailing wage requirements of article 8 of the Labor Law are not applicable to the construction, reconstruction, renovation, repair and maintenance of charter schools. (*Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532; *Matter of National R.R. Passenger Corp. v Hartnett*, 169 AD2d 127; *Austin v City of New York*, 258 NY 113; *Long Is. R.R. Co. v Department of Labor*, 256 NY 498; *Bucci v Village of Port Chester*, 22 NY2d 195.)

*James R. Sandner*, Latham, and *Deborah A. Milham* for New York State United Teachers, amicus curiae. Charter schools are public entities for purposes of the prevailing wage law under the first prong of the *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [1983], *affd for reasons stated below* 63 NY2d 810 [1984]) test. (*Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120; *Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578; *Matter of New York State United Teachers v Brighter Choice Charter School*, 64 AD3d 1130, 13 NY3d 712; *Matter of Stephens & Rankin v Hartnett*, 160 AD2d 1201; *Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v Sweeney*, 89 NY2d 395; *Bucci v Village of Port Chester*, 22 NY2d 195; *Matter of Cocchiarella v Joseph*, 286 App Div 1076; *Matter of Smith v Joseph*, 275 App Div 201, 300 NY 516; *Matter of Gaston v Taylor*, 274 NY 359; *Austin v City of New York*, 258 NY 113.)

*Gibson, Dunn & Crutcher LLP*, New York City (*Jennifer H. Rearden, Michelle M. Craven* and *Netra Sreeprakash* of counsel), for New York City Charter School Center, amicus curiae. I. Charter schools are not "public agencies." (*Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532.) II. Contracts for the construction, renovation, repair and maintenance of charter schools are not "public works." (*Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532; *Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d 205, 76 NY2d 993; *Matter of National R.R. Passenger Corp. v Hartnett*, 169 AD2d 127; *Matter of Hart v Holtzman*, 215 AD2d 175.)

**OPINION OF THE COURT**

Pigott, J.

Our State Constitution provides that laborers, workers and mechanics engaged in "any public work" cannot "be paid less

than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used" (NY Const, art I, § 17). Labor Law § 220 implements this constitutional requirement, providing in pertinent part:

> "Each contract to which the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law is a party, and any contract for public work entered into by a third party acting in place of, on behalf of and for the benefit of such public entity pursuant to any lease, permit or other agreement between such third party and the public entity, and which may involve the employment of laborers, workers or mechanics shall contain a stipulation that no laborer, worker or mechanic in the employ of the contractor, subcontractor or other person doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day or more than five days in any one week except in cases of extraordinary emergency including fire, flood or danger to life or property" (Labor Law § 220 [2]).

This litigation was sparked by an opinion letter dated August 31, 2007, wherein the New York State Department of Labor declared that the prevailing wage law mandate of Labor Law § 220 applied to all charter school projects. Two weeks later, on September 11, 2007, the Commissioner notified the Charter Schools Institute and the Commissioner of the State Education Department that it would begin to enforce prevailing wage laws on all charter school projects for which the advertising of bids occurred on or after September 20, 2007.

This determination was in stark contrast to the position taken by the Department in the previous seven years. In an opinion letter dated June 29, 2000, the Department then reasoned that,

> "generally speaking, a Charter School is not a public entity. Therefore, Charter Schools cannot, as a class, be deemed to be Departments of Jurisdiction as defined under Labor Law Article 8, Section 220. And, in the absence of a contract with a public entity, the requirement to pay prevailing hourly

wages and supplements to workers, laborers, and mechanics employed on a project does not arise."

In response to this change of opinion, petitioners, two foundations that support the creation of New York charter schools, the New York Charter School Association and three charter schools, commenced the instant proceedings, seeking a judgment declaring that the Commissioner's new position was taken in excess of her jurisdiction, that the prevailing wage laws do not apply to charter schools and an order enjoining the Commissioner from imposing the prevailing wage laws on them.

Supreme Court denied the petitions holding that the charter agreement between the school and the chartering entity is itself a contract between a public entity and a third party that may involve the employment of laborers, workers or mechanics (*Matter of Foundation for a Greater Opportunity v Smith*, 20 Misc 3d 453, 464 [Sup Ct, Albany County 2008]). Therefore, the court reasoned, the construction, renovation, repair and maintenance of charter schools facilities constitute projects for public works (*id.* at 467).

The Appellate Division reversed, granted the petitions and declared that "petitioners are not subject to the prevailing wage laws of Labor Law article 8" (*Matter of New York Charter School Assn. v Smith*, 61 AD3d 1091, 1095 [3d Dept 2009]). The court found that charter schools are not public entities and, further, that charter agreements are not contracts involving the employment of laborers, workers or mechanics (*id.* at 1094).

This Court granted leave and we now affirm.

I.

In *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [1983], *affd for reasons stated below* 63 NY2d 810 [1984]), we held that two conditions must be met for the prevailing wage law to apply: "(1) the public agency must be a party to a contract involving the employment of laborers, workmen, or mechanics, and (2) the contract must concern a public works project" (*id.* at 537).

In order for the prevailing wage laws to apply to charter schools, both prongs of the *Erie County* test must be met.

The Commissioner argues that the first prong, the contract requirement, is met for three independent reasons. First, taking the position of Supreme Court, the charter agreement governing the operation of a charter school is itself a contract with a

public entity that contemplates the employment of workers on facility projects. Second, the charter school should be regarded as a public entity for purposes of the prevailing wage law. Finally, the charter school may be regarded as a third-party intermediary when it enters into a charter school facility contract on behalf of or in place of the chartering entity (usually a school district), pursuant to the charter that created it. Taking each of these arguments in order, we hold that the projects undertaken by charter schools contemplated by this litigation do not meet the contract prong of the *Erie County* test.

## II.

The Commissioner's first argument is easily disposed of. Labor Law § 220 (2), by its terms, requires that the contract be particular to the "work contemplated" by the parties. In other words, construction or renovation work must be involved (*see e.g. Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d 205 [3d Dept 1990] [lease agreement between county and limited partnership providing financing for the construction project]; *Matter of National R.R. Passenger Corp. v Hartnett*, 169 AD2d 127 [3d Dept 1991] [financing and implementation agreements for the construction]). A charter agreement is not such a document. It is an authorizing agreement under which an agency has determined that an applicant school is competent to be licensed as an education corporation and nothing more (*see* Education Law § 2852 [2]). Although the charter agreement must contain certain information, such as the location of the proposed charter school (*see* Education Law § 2851 [2] [j]), it is not a contract for public work involving the hiring of laborers, workers, or mechanics within the meaning of section 220.

## III.

As to the Commissioner's second argument, that charter schools are public entities within the meaning of the prevailing wage law, we disagree. Only four public entities are specifically identified under Labor Law § 220 (2): the State, a public benefit corporation, a municipal corporation or a commission appointed pursuant to law. By its terms, the statute does not expressly apply to education corporations, and that includes charter schools (*see* Education Law § 216-a [1] [a]; § 2853 [1]).

We recognize that charter schools possess some characteristics similar to a public entity. The Legislature created charter schools as "independent and autonomous *public* school[s]" and

granted them powers that "constitute the performance of essential public purposes and governmental purposes of this [S]tate" (Education Law § 2853 [1] [c], [d] [emphasis added]). At the same time, however, charter schools are not governed by appointees of the government, but by a self-selecting board of trustees that has "final authority for policy and operational decisions of the school" (Education Law § 2853 [1] [f]). Further, the Legislature made clear that charter schools are exempt from all other state and local laws, rules, regulations or policies governing public schools (*see* Education Law § 2854 [1] [b]). When the Legislature intended charter schools to be subject to particular laws governing public entities, it has said so (*see e.g.* Education Law § 2584 [1] [e]). Thus, the status of charter schools has often been difficult to define because they may not be easily identified as either a purely private or public entity (*see e.g. Matter of New York Charter Schools Assn., Inc. v DiNapoli,* 13 NY3d 120 [2009] [holding that charter schools are not political subdivisions of the State, and the task of auditing charter schools was not incidental to audits of public school districts]). While charter schools are a hybrid of sorts and operate on different models, they are significantly less "public" than the entities in those four categories, and thus, it is clear that these charter schools do not fall within any of the four categories to which the prevailing wage law applies.

IV.

Finally, the Commissioner argues that based on a recent amendment to Labor Law § 220, charter schools now fall within its ambit. The argument goes that when the charter schools contract for renovation work, they are contracting in place of, on behalf of and for the benefit of the State or Board of Regents.

In 2007, Labor Law § 220 (2) was amended to close what the bill's sponsor called a "loophole" (Senate Introducer's Mem in Support, Bill Jacket, L 2007, ch 678, at 27, 2007 McKinney's Session Laws of NY, at 2162) in the prevailing wage laws that led to the decision in *Matter of Pyramid Co. of Onondaga v New York State Dept. of Labor* (223 AD2d 285 [3d Dept 1996]). In *Pyramid,* a private contractor, acting under a State Department of Transportation (DOT) permit, built a public road on state land to provide access to Interstate Highway 81 (*id.* at 286). The court found that, although the highway project was a "public works project," prevailing wage laws did not apply because "DOT was not a party to any contract involving the construction of the project" (*id.* at 287).

The purpose of this amendment was to enforce prevailing wage laws on jobs, like the one in *Pyramid*, in which private parties are carrying out public work projects on behalf of public owners. Neither the amendment nor any of the supporting legislative history suggest that the prevailing wage laws would therefore extend to charter schools.

Indeed, the Charter Schools Act itself provides to the contrary: "[n]either the local school district, the charter entity nor the state shall be liable for the debts or financial obligations of a charter school or any person or corporate entity who operates a charter school" (Education Law § 2853 [1] [g]).

A charter school must secure and maintain, on its own, the facilities where it conducts its educational mission—whether by raising private funds to build a school, renting existing facilities, arranging to have a donor provide facilities or other appropriate means. When an education corporation enters into a facilities contract for a charter school, it typically does so on its own behalf, in its own name, and at its own risk. Thus, unlike in *Pyramid*, where the private entity was clearly acting to benefit the State, a renovation contract by a charter school is only for the benefit of the charter school itself.

Our holding today should not be read to mean that every facilities contract in which a charter school is a party is exempt from the prevailing wage laws. There may be contracts where a charter school is acting in place of, on behalf of and for the benefit of a public entity, where the prevailing wage law may apply. We need not address the application of section 220 to those situations because the facilities contracts contemplated by this litigation involve projects in which the foundation or the charter school owns the building and all construction, renovation, repair and maintenance of the building are the responsibility of the charter school.

## V.

In sum, we hold that the first prong of the *Erie County* test, the contract requirement, has not been met in these cases. Thus, the blanket ruling of the Commissioner, based on the arguments set forth, is in error. In light of our holding, we need not consider whether charter school projects are public works under the second prong of the prevailing wage law test.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN (dissenting). Charter schools provide alternative educational opportunities in our communities. With the use of innovative teaching techniques and environments, these schools are designed to improve the quality of our children's education. However, charter schools are, in essence, public schools performing a vital public service and should be treated as such for purposes of the prevailing wage rate requirement. Accordingly, I respectfully dissent.

The State Constitution provides that the "[l]abor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed" (NY Const, art I, § 17). To that end, the Constitution states that

> "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work . . . [shall] be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used" (NY Const, art I, § 17).

These requirements are implemented by article 8 of the Labor Law. Labor Law § 220 sets limitations on the number of hours and the length of the work week for workers on public works contracts, and requires payment of the prevailing wage rate for

> "[e]ach contract to which the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law is a party, and any contract for public work entered into by a third party acting in place of, on behalf of and for the benefit of such public entity pursuant to any lease, permit or other agreement between such third party and the public entity, and which may involve the employment of laborers, workers or mechanics" (Labor Law § 220 [2], [3] [a]).

This Court has held that Labor Law § 220

> "must be construed with the liberality needed to carry out its beneficent purposes . . . [The] statute is an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics. It is to be interpreted with the degree of liberality essential to the attainment of the end in view" (*Bucci v Village of Port Chester*, 22 NY2d 195, 201 [1968] [internal quotation marks omitted]).

The long-standing test for determining whether the prevailing wage rate is applicable to a given project is found in *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [4th Dept 1983], *affd* 63 NY2d 810 [1984]). The Court developed a two-part test that needed to be satisfied before the prevailing wage rate requirement had to be observed: "(1) the public agency must be a party to a contract involving the employment of laborers, workmen, or mechanics, and (2) the contract must concern a public works project" (*Erie County*, 94 AD2d at 537). The Appellate Division based its determination that the prevailing wage rate does not apply to charter schools only on the first prong—the contract prong—of the *Erie County* test.

As noted above, Labor Law § 220 (2) contains a clause allowing a contract entered into by a third party on behalf of a public entity to qualify as a "contract" within the meaning of the statute. That provision was added in 2007, in response to the decision in *Matter of Pyramid Co. of Onondaga v New York State Dept. of Labor* (223 AD2d 285 [3d Dept 1996]). In *Pyramid*, the owner of a mall obtained highway work permits from the Department of Transportation (DOT), allowing roads to be constructed on state land, connecting the mall to the nearby interstate highway. The mall owner then contracted with a third party to perform the work. The Court found it clear that the project would qualify as a "public works project," but found that the contract requirement was not satisfied, in part because DOT was not a party to any contract—the sole contract being between the mall owner and the third party (*see Pyramid*, 223 AD2d at 287-288). The Court therefore found that the project was not subject to the prevailing wage law.

The legislative history demonstrates that the 2007 amendments were intended to overrule the holding in *Pyramid*. "The narrow court interpretations of the term 'agreement' created an unwarranted loophole that has prevented the application of prevailing wage rules to public work projects that should be subject to those rules, and this bill properly closes that loophole in the law" (Governor's Approval Mem, Bill Jacket, L 2007, ch 678, at 5, 2007 NY Legis Ann, at 426). In addition, the amendment was intended to enforce the prevailing wage rate "where the involvement of a third party obviates the existence of a direct contractual relationship between the public owner and the contractor performing the work" (Senate Introducer's Mem in Support, Bill Jacket, L 2007, ch 678, at 27, 2007 NY Legis Ann, at 27, 2007 McKinney's Session Laws of NY, at 2162). The legislative history does not explicitly mention charter schools.

In order to determine whether charter schools are subject to prevailing wage rates, some background information is helpful. An application to establish a charter school must be submitted to a "charter entity" for approval (*see* Education Law § 2851 [3]). Charter entities include the board of regents, the board of trustees of SUNY or the board of education of the local school district (or chancellor of the city school district) (*see* Education Law § 2851 [3]). The charter application must contain a variety of information, including "[i]nformation regarding the facilities to be used by the school, including the location of the school, if known" (Education Law § 2851 [2] [j]). The schools can be located in existing public school buildings or other public buildings, private work sites or other suitable locations (*see* Education Law § 2853 [3] [a]). Upon closure or dissolution, the assets of the charter school are given either to the local school district or to another charter school within the district (Education Law § 2851 [2] [t]).

Once the board of regents approves the charter school, it is incorporated as an education corporation. "A charter school shall be deemed an independent and autonomous public school, except as otherwise provided in this article. The charter entity and the board of regents shall be deemed to be the public agents authorized to supervise and oversee the charter school" (Education Law § 2853 [1] [c]). Moreover, "[t]he powers granted to a charter school under this article constitute the performance of essential public purposes and governmental purposes of this state" (Education Law § 2853 [1] [d]).*

Given the role that charter schools play, it is apparent that the present situation is precisely the type of scenario the third party amendment to section 220 was designed to address. It is clear that if a private school were constructing its own facility, the public wage rate would not, and should not, apply. If, on the other hand, the chartering entity had contracted for such work on its own, that work would undoubtedly be subject to the prevailing wage requirement (*see e.g. Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207 [1990]).

---

* Charter schools are treated as public schools for certain purposes, but not for others. For example, charter schools are required to "meet the same health and safety, civil rights, and student assessment requirements applicable to other public schools, except as otherwise specifically provided in this article" (Education Law § 2854 [1] [b]). However, they are generally exempt from other state and local laws pertaining to public and private schools (*see* Education Law § 2854 [1] [b]).

The charter school, performing an essential public and governmental service pursuant to Education Law § 2853 (1) (d), as authorized by the chartering entity, should be subject to the prevailing wage rate. In this context, the charter school essentially acts as a stand-in for the chartering entity.

The majority opinion rejects the applicability of the third party amendment, in part, on the basis of a statutory debt provision (*see* majority op at 411). That provision makes clear that only a charter school will be liable for its financial obligations, but has nothing to do with the issue of whether prevailing wages must be paid to workers. Where the money comes from for a construction or renovation project—whether that source be public or private—is not dispositive of the prevailing wage question. The statute makes clear that it pertains to third parties "acting in place of . . . and for the benefit of" public entities (Labor Law § 220 [2]). Finally, it is simply not the case that a contract for the renovation of a charter school inures solely to the benefit of the charter school itself. Such facilities provide benefits for students and the public similar to those provided by public school facilities. Given the State's strong public policy in favor of adequate wages on public works projects and that Labor Law § 220 is subject to liberal construction, the Department of Labor's interpretation of the statute finding charter schools subject to the prevailing wage rate should be upheld.

In addition, the charter agreement itself can be considered the contract to which a public entity is a party, without resort to the third party amendment. The majority finds that the charter is not a contract involving the employment of laborers because the charter determines "nothing more" than that the applicant can be licensed as an education corporation (majority op at 409). However, the language of the statute itself requires only that the contract "may involve the employment of laborers" (Labor Law § 220 [2]). The *Erie County* test likewise characterizes the contract as "involving" such employment (94 AD2d at 537). Since the contract itself does not need to be strictly a construction contract, the charter, having the chartering entity as a party and contemplating that construction or renovation work will be necessary in order to obtain adequate facilities, would satisfy this contract requirement.

Although making charter schools adhere to prevailing wage requirements may impose additional costs in providing their valuable public service, the State's public policy and statutory framework, as well as the essentially public nature of charter

schools make clear that the prevailing wage rate applies to the construction and renovation of charter schools. Accordingly, I would reverse the order of the Appellate Division.

Judges GRAFFEO, READ, SMITH and JONES concur with Judge PIGOTT; Chief Judge LIPPMAN dissents and votes to reverse in a separate opinion in which Judge CIPARICK concurs.

Order affirmed, with costs.