■ In the Matter of M.G.M. INSULATION, INC., et al., Petitioners, v COLLEEN C. GARDNER, as Commissioner of Labor, Respondent. [927 NYS2d 242]—

Egan Jr., J.

Bath Volunteer Fire Department, Inc. (hereinafter BVFD) is a Type B not-for-profit fire corporation located in Steuben County and organized pursuant to N-PCL 1402 (b) for the stated purpose of "maintain[ing] a fire fighting and rescue unit to protect the Village of Bath and other contracted fire districts outside the Village." Each year BVFD enters into a service agreement with the Village to provide fire protection and emergency services to residents of the relevant fire districts. The contract price is based upon BVFD's projected operating costs for the year, and the proceeds from these annual service agreements make up approximately 80% of BVFD's budget. Fundraising, billing for services and grant proceeds make up the resulting shortfall.

BVFD originally operated out of a fire station owned by the Village but, over time, space constraints and a growing fleet of vehicles prompted consideration of a new space. To that end, BVFD commissioned and paid for a feasibility study, which estimated the cost of a new facility to be $2.7 million. After locating suitable parcels of land and obtaining interim financ-

ing, BVFD secured a loan from the United States Department of Agriculture (hereinafter USDA) in August 2004 for approximately $2.5 million, which was to be repaid in annual installments of $158,658 over the course of the ensuing 30 years. Later that same month, the Village declared itself to be lead agency for the project for purposes of the State Environmental Quality Review Act (*see* ECL art 8 [hereinafter SEQRA]) and, in September 2004, agreed to guarantee the interim financing obtained by BVFD.[1] Prior to BVFD securing the USDA loan, the Village apparently retired debt from a previous bond issue, thereby freeing up $150,000 in Village funds each year. BVFD's service agreement subsequently was increased by that amount, and BVFD used the additional $150,000—plus fundraising moneys and/or proceeds from the rental of the fire station's community room—to repay the USDA loan each year.

The final parcel of land needed for the project was purchased in September 2005 and, in June 2006, BVFD entered into a contract with petitioner R-J Taylor General Contractors, Inc. (hereinafter Taylor) to serve as its general contractor. An investigation thereafter was commenced to determine whether petitioners—Taylor and each of its subcontractors—were required to pay their workers the prevailing rates of wages and supplements pursuant to Labor Law § 220. Based upon an opinion letter authored by counsel for the Department of Labor, the Bureau of Public Work determined that the project was subject to the terms of the prevailing wage law and a hearing on the matter was scheduled. In the interim, BVFD agreed to indemnify petitioners for any claims for unpaid wages.

At the conclusion of the hearing that followed, the Hearing Officer found, among other things, that BVFD was the functional equivalent of a municipal department, thus qualifying as a public agency within the meaning of Labor Law § 220, and, further, that the construction of the new fire station constituted a public work project. Hence, the Hearing Officer reasoned, the provisions of Labor Law article 8 applied to the contract between Taylor and BVFD. Respondent thereafter adopted the Hearing Officer's recommendation, prompting petitioners to commence this proceeding pursuant to CPLR article 78 to challenge that determination.

"Our State Constitution provides that laborers, workers and mechanics engaged in 'any public work' cannot 'be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to

---

1. This guarantee ultimately was not provided, however, as the bank in question deemed it unnecessary.

be situated, erected or used' " (*Matter of New York Charter School Assn. v Smith*, 15 NY3d 403, 406-407 [2010], quoting NY Const, art I, § 17). This constitutional mandate, in turn, is implemented through Labor Law § 220 (*see Matter of New York Charter School Assn. v Smith*, 15 NY3d at 407), which, prior to October 27, 2007, applied to public work contracts "to which the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law is a party" (Labor Law § 220 [former (2)]).[2] In order for Labor Law § 220 to be triggered, however, two requirements must be met: "(1) the public agency must be a party to a contract involving the employment of laborers, work[ers], or mechanics, and (2) the contract must concern a public works project" (*Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532, 537 [1983], *affd* 63 NY2d 810 [1984]; *see Matter of New York Charter School Assn. v Smith*, 15 NY3d at 408; *County of Suffolk v Coram Equities, LLC*, 31 AD3d 687, 688 [2006]; *Matter of Sarkisian Bros. v Hartnett*, 172 AD2d 895, 896 [1991], *lv denied* 78 NY2d 859 [1991]). The "prevailing wage requirement . . . is to be liberally construed to effectuate its beneficent purposes" (*Matter of Bridgestone/Firestone, Inc. v Hartnett*, 175 AD2d 495, 496 [1991]; *see Matter of Earth Tech, Inc. v Angello*, 47 AD3d 1080, 1082 [2008]), and respondent's determination in this regard, if supported by substantial evidence in the record as a whole, will not be disturbed (*see Matter of Sarco Indus. v Angello*, 23 AD3d 715, 716 [2005]; *Matter of Agency Constr. Corp. v Hudacs*, 205 AD2d 980, 981 [1994]; *Matter of Otis E. Serv. v Hudacs*, 185 AD2d 483, 484 [1992])—even if other evidence in the record could support a contrary conclusion (*see Matter of Lantry v State of New York*, 12 AD3d 864, 867 [2004], *affd* 6 NY3d 49 [2005]).

As to the first prong of the *Erie County* test, there is no question that the contract between BVFD and Taylor is a construction contract contemplating the employment of "laborers, workers or mechanics" (Labor Law § 220 [former (2)]). Hence, the issue is whether BVFD may, under the particular facts of this

---

**2.** Labor Law § 220 (2) was amended in 2007 to bring within its reach "any contract for public work entered into by a third party acting in place of, on behalf of and for the benefit of such public entity pursuant to any lease, permit or other agreement between such third party and the public entity" (L 2007, ch 678, § 1). The amendment was designed to close a perceived "loophole" in the statutory scheme and "enforce prevailing wage laws on jobs . . . in which private entities are carrying out public work projects on behalf of public owners" (*Matter of New York Charter School Assn. v Smith*, 15 NY3d at 411). As the amendment did not take effect until long after BVFD entered into the contract with Taylor, it has no applicability here.

case, be deemed the functional equivalent of a municipal corporation within the meaning of Labor Law § 220 (former [2]). Although the record reflects that the day-to-day operations of BVFD are governed by its executive board, as a fire corporation organized pursuant to N-PCL 1402 (b), BVFD nonetheless remains "under the control of the city, village, fire district or town authorities having, by law, control over the prevention or extinguishment of fires therein" (N-PCL 1402 [e] [1]; *see Miller v Morania Oil of Long Is., O.C.P.*, 194 AD2d 770, 771 [1993]; *Cuddy v Town of Amsterdam*, 62 AD2d 119, 121 [1978]), i.e., the Village of Bath. Additionally, BVFD's former fire chief, who regularly attended meetings of the Village's Board of Trustees, testified that, although BVFD had input in the selection of fire trucks, the Board had to approve any such purchases, and it was the Village that actually handled the bidding process, owned the trucks and furnished the fuel therefor. The Village also owned the building out of which BVFD previously operated and, through the provision of the underlying service agreements, funded the lion's share of BVFD's operating expenses.

With respect to the project at issue, the record reveals that the Village, in addition to designating itself as lead agency for purposes of SEQRA review, initially was quite involved in discussions regarding the financing and development of the project, as evidenced by, among other things, its willingness to guarantee a portion of the construction debt. Notably, the Board's December 12, 2005 meeting minutes indicated that, once the new station was 80% complete, BVFD would transfer ownership of the station—and the debt—to the Village. Although the former fire chief testified that he did not recall any discussion of turning the fire station over to the Village (and this ultimately did not occur), he candidly acknowledged that BVFD had assumed ownership of the station in order to secure lower labor rates for the project.[3] Indeed, it was not until the Bureau of Public Work commenced the underlying investigation that the Village adopted a resolution stating that it "ha[d] no legal or equitable interest in any proposed building project by [BVFD] as to a new fire station facility . . . whether as a party, guarantor or otherwise" and thereafter revised its service agreement with BVFD to draw a clear distinction between the two entities. In light of the foregoing, respondent's finding that BVFD—despite its incorporation as a private entity—essentially functioned as a Village department and, therefore, could be deemed a municipal

**3.** According to the former fire chief, once it became apparent that the Bureau of Public Work was hinging its case on "our legal paperwork," the Village and BVFD "made sure the lines were clear between us."

corporation within the meaning of Labor Law § 220 (former [2]) is supported by substantial evidence in the record as a whole— notwithstanding other proof that could support a contrary conclusion.[4]

We turn next to the second prong of the *Erie County* test— namely, whether the construction of the new fire station constituted a public work project. In the absence of a statutory definition for that term, courts have looked to "the purpose, nature and function of the construction" project (*Cattaraugus Community Action v Hartnett*, 166 AD2d 891, 891 [1990]; *see Matter of Hart v Holtzman*, 215 AD2d 175, 176 [1995]; *Matter of Vulcan Affordable Hous. Corp. v Hartnett*, 151 AD2d 84, 86 [1989]; *Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d at 538) and have concluded that "[t]o be a public work the project's primary objective must be to benefit the public" (*Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d 205, 207 [1990], *affd* 76 NY2d 993 [1990]; *see Feher Rubbish Removal, Inc. v New York State Dept. of Labor, Bur. of Pub. Works*, 28 AD3d 1, 7 [2005], *lv denied* 6 NY3d 711 [2006]; *Matter of Sarkisian Bros. v Hartnett*, 172 AD2d at 896).

Here, despite petitioners' protestations to the contrary, there can be no serious dispute that the construction of the new fire station qualified as a public work project. Regardless of the manner in which the fire station was owned and financed, the primary purpose of the construction project was to provide enhanced fire prevention services to the community and, therefore, the public is a direct beneficiary of the new fire station (*see Feher Rubbish Removal, Inc. v New York State Dept. of Labor, Bur. of Pub. Works*, 28 AD3d at 7; *Matter of Onondaga-Cortland-Madison Bd. of Coop. Educ. Servs. v McGowan*, 285 AD2d 36, 38 [2001]; *compare Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d at 207-208). Indeed, BVFD may be said to be discharging a public function in providing fire protection services to the geographical area it serves (*see* N-PCL 1402 [e] [1]; *cf. Matter of Long Is. Light. Co. v Industrial Commr. of N.Y. State*, 40 AD2d 1003, 1004 [1972], *affd* 34 NY2d 725 [1974]; *see generally Helman v County of Warren*, 114 AD2d 573, 573-574 [1985]). Further, the public has access to and enjoyment of the station via the station's community room (*compare Matter of Vulcan Affordable Hous. Corp. v Hartnett*, 151 AD2d at 87)—access and enjoyment that are not diminished by the fact that BVFD charges a fee for the room's use.

---

4. In light of this conclusion, we need not reach respondent's alternate theory that the underlying service agreements could be used to satisfy the first prong of the *Erie County* test.

In conclusion, as respondent's determination regarding the applicability of the prevailing wage requirements of Labor Law article 8 to the project at hand is supported by substantial evidence, it will not be disturbed. Petitioners' remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Rose, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.