A. P. v John W. Lavelle Preparatory Charter Sch. (2024 NY Slip Op 02205)

A. P. v John W. Lavelle Preparatory Charter Sch.

2024 NY Slip Op 02205

Decided on April 24, 2024

Appellate Division, Second Department

Iannacci, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ANGELA G. IANNACCI
LILLIAN WAN
JANICE A. TAYLOR, JJ.

2021-07320
 (Index No. 151118/17)

[*1]A. P., etc., et al., respondents, 
v
John W. Lavelle Preparatory Charter School, appellant.

APPEAL by the defendant, in an action to recover damages for personal injuries, etc., from an order of the Supreme Court (Judith N. McMahon, J.), dated October 7, 2021, and entered in Richmond County. The order denied the defendant's motion pursuant to CPLR 3211(a) to dismiss the complaint or, in the alternative, for summary judgment dismissing the complaint.

Strikowsky Drachman & Shapiro, New York, NY (Sim R. Shapiro of counsel), for appellant.
Elefterakis, Elefterakis & Panek, New York, NY (Eileen Kaplan of counsel), for respondents.

IANNACCI, J.

OPINION & ORDER
On this appeal, we are called upon to decide, as an issue of first impression, whether the notice of claim requirements of Education Law § 3813(2) and General Municipal Law § 50-e apply to charter schools. We conclude that those statutes do not require service of a notice of claim prior to commencement of a tort action against a charter school.
In December 2016, the infant plaintiff, A. P., was an eighth-grade, special education student attending the defendant, John W. Lavelle Preparatory Charter School (hereinafter the School), a charter school located in Staten Island. On December 15, 2016, according to A. P., she was walking in the hallway between classes when another student pushed her from behind with two hands and she fell to the floor, injuring her elbow. Immediately after the incident, a teacher at the School, Tytianna Fonville, came out of her classroom upon hearing a commotion in the hallway. Fonville testified at her deposition that she approached A. P., who was surrounded by 5 to 10 students, and A. P. was agitated. Fonville escorted A. P. to the nurse. Ordinarily, school staff were assigned to posts in the hallways to monitor the students during transitions between classes. However, Fonville did not recall seeing someone posted in the vicinity at the time of the incident, and A. P. testified at her deposition that the only adult present at that time was Fonville.
Prior to the incident, according to A. P., she had been bullied at the School, including being physically pushed in the hallways. A. P. testified at her deposition that she had complained to a teacher about these prior incidents and also filled out incident reports. A. P.'s mother similarly testified at her deposition that she had made complaints to School staff concerning such prior incidents, both orally and by email, including an email to the principal sent in October 2016 discussing a prior incident in which A. P. allegedly had been pushed during dismissal.
In May 2017, A. P., by her mother, and her mother individually, commenced this action against the School, alleging, inter alia, negligent supervision based upon the December 15, 2016 pushing incident. After the completion of discovery, the School moved pursuant to CPLR [*2]3211(a) to dismiss the complaint on the ground that the plaintiffs had failed to serve a notice of claim or, in the alternative, for summary judgment dismissing the complaint on the merits. By order dated October 7, 2021, the Supreme Court denied the motion. The School appeals.
1. Motion to Dismiss for Failure to Serve a Notice of Claim
The School argues that the complaint must be dismissed because the plaintiffs were required to serve the School with a notice of claim pursuant to Education Law § 3813(2) and General Municipal Law § 50-e prior to commencing suit against it, and it is undisputed that the plaintiffs did not serve such notice or request leave to serve a late notice of claim. However, the School's contention that the plaintiffs were required to serve it with a notice of claim is not consonant with either the statutory language of Education Law § 3813 or the scheme and purpose of the New York Charter Schools Act of 1998 (hereinafter the Charter Schools Act) (Education Law § 2850 et seq.).
Education Law § 3813(2) provides, in pertinent part: "[N]o action or special proceeding founded upon tort shall be prosecuted or maintained against any of the parties named in this section . . . unless a notice of claim shall have been made and served in compliance with [General Municipal Law § 50-e]" ([emphasis added]; see Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 370). "General Municipal Law § 50-e does not, in and of itself, require the service of a notice of claim, but rather simply recognizes that when such a notice of claim is required by other pertinent laws, it must be served in accordance with the strictures of General Municipal Law § 50-e" (Bovich v East Meadow Pub. Lib., 16 AD3d 11, 16), such as the provision thereof requiring that service of notices of claim be made within 90 days after the claim arises (see General Municipal Law § 50-e[1][a]).
Before Education Law § 3813 was enacted, notice of claim requirements were written into local municipal charters (see 10th Ann Rep of Jud Council of St of NY, 1944, at 284-296 [analyzing the charters of the cities of New York State "with Reference to Notice of Claims"]). The predecessor statute to Education Law § 3813 was enacted to extend the same protection to school districts, which operated independently from municipalities and, unlike municipal agencies, were subject to suit separately (see H & J Floor Covering v Board of Educ. of City of N.Y., 66 AD2d 588, 595-596 [discussing the history of Education Law § 3813]).
Initially, section 3813's predecessor statute only protected school districts, but it was, through the years, expanded by amendment (see H & J Floor Covering v Board of Educ. of City of N.Y., 66 AD2d at 595-598; L 1972, ch 434, § 1; L 1978, ch 346, § 1). In its current version, the "parties named" in Education Law § 3813, for whom notices of claim are required, include: "any school district, board of education, board of cooperative educational services, [and] school[s] provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four" (id. § 3813[1]; see General Municipal Law § 50-i[1] [requiring service of a notice of claim as a condition precedent to an action against a "school district" for personal injury]).
The reference in Education Law § 3813(1) to schools "provided for in article eighty-five of this chapter" denotes certain schools for the deaf or blind or individuals with disabilities provided for in Education Law § 4201, so-called "4201 schools" (see id. § 4201 et seq.). The reference in section 3813(1) to a school provided for in "chapter ten hundred sixty of the laws of nineteen hundred seventy-four" pertains to the Human Resources School, as it was then called, a school for instruction of children with severe physical disabilities (see L 1974, ch 1060). Education Law § 3813 was amended to include these state-supported schools in 1978 (see L 1978, ch 346 § 1). The bill jacket to the law so amending Education Law § 3813 explained that the purpose of the amendment was to extend the protection of the 90-day notice requirement "now applicable to public schools, to specialized educational institutions supported by state funds" (Senate Mem in Support, Bill Jacket, L 1978, ch 346 at 5; Assembly Mem in Support, Bill Jacket, L 1978, ch 346 at 6).
Education Law § 3813 therefore specifically identifies the entities for which notices of claim are a condition precedent to suit, including not only school districts and boards of education, but also particular state-supported schools. Nevertheless, a charter school, established pursuant to article 56 of the Education Law, is not one of the entities specified therein. The "'maxim expressio unius est exclusio alterius' applies 'in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded'" (Colon v Martin, 35 NY3d 75, 78, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240; see Matter of Alonzo M. v New York City Dept. of Probation, 72 NY2d 662, 665). Applying that maxim here, [*3]we must conclude that since the Legislature expressly set forth the particular entities to which the notice of claim requirement of Education Law § 3813 applies, including through several amendments of the statute, the failure to include charter schools as one of the "parties named" in Education Law § 3813 was intentional. When the Charter Schools Act was enacted, the Legislature could have again amended Education Law § 3813 to include charter schools if it had intended for the notice of claim requirements to be extended to such entities (see People v Corr, 208 AD3d 136, 139).
The School contends that even though charter schools are not expressly named in Education Law § 3813, the term "school district," as used in that statute, must be read to encompass charter schools because a charter school is "effectively . . . a public school." Initially, this argument is undercut by the 1978 legislation amending Education Law § 3813 to expressly include 4201 schools. The legislative history of those amendments explained that the amendments were justified because the State supported, "almost entirely, the fiscal needs" of such schools on the premise that "the State has the financial obligation to provide education for all its people" (Senate Mem in Support, Bill Jacket, L 1978, ch 346 at 5; Assembly Mem in Support, Bill Jacket, L 1978, ch 346 at 6). The legislative memoranda continued: "To all intents and purposes, therefore, these schools are public schools although administered by private, non-profit institutions" (Senate Mem in Support, Bill Jacket, L 1978, ch 346 at 5; Assembly Mem in Support, Bill Jacket, L 1978, ch 346 at 6). Nevertheless, the Legislature found it necessary to amend section 3813 to expressly include 4201 schools, and thus, did not consider that such schools were covered under the term "school district" despite the fact that they were "[t]o all intents and purposes . . . public schools" (Senate Mem in Support, Bill Jacket, L 1978, ch 346 at 5; Assembly Mem in Support, Bill Jacket, L 1978, ch 346 at 6).
The School's interpretation of section 3813 as including charter schools under the term "school district" also is not supported by the scheme and purpose of the Charter Schools Act. Through enactment of the Charter Schools Act, the Legislature authorized the creation of a system of charter schools for the purpose of "provid[ing] opportunities for teachers, parents and community members to establish and maintain schools that operate independently of existing schools and school districts" (Education Law § 2850[2] [emphasis added]; see Assembly Mem in Support, Bill Jacket, L 1998, ch 4 at 7). To that end, such individuals are authorized to submit an application to establish a charter school to a "charter entity"—i.e., a board of education of an eligible school district, the chancellor of certain eligible city school districts, the Board of Trustees of the State University of New York, or the Board of Regents (Education Law § 2851[1], [3]). Upon approval of the application by the charter entity, the applicant and the charter entity execute a written agreement known as the charter (see id. § 2852[5]). All charters must be approved by the Board of Regents (see id. §§ 2851[3][c]; 2852[5-a]), and, once approved, "the Board of Regents incorporates the charter school as an 'education corporation' governed by the Not-For-Profit Corporation Law" (Matter of New York Charter Schools Assn., Inc. v DiNapoli, 13 NY3d 120, 124-125, citing Education Law §§ 216-a[1][a]; [4]; 2853[1]).
As the School here observes, the Legislature has provided that a charter school so established "shall be deemed an independent and autonomous public school," supervised and overseen by the charter entity and the Board of Regents, and that the powers granted to a charter school "constitute the performance of essential public purposes and governmental purposes" (Education Law § 2853[1][c], [d]). It is this declaration of the character of a charter school and the nature of its powers that the School relies upon in asserting that it must be considered a "school district" for purposes of the notice of claim requirements. However, neither the public character nor the purpose of charter schools renders them equivalent to a school district for purposes of invoking the protections of notice of claim statutes.
Such prelitigation notices permit public entities to "make an early investigation of [a] claim while the facts surrounding the alleged claim are still 'fresh'" (Matter of Martin v School Bd. of Union Free Dist. No. 28, Long Beach, 301 NY 233, 236) and to "'decide whether the case is one for settlement or litigation'" (Rosenbaum v City of New York, 8 NY3d 1, 11, quoting Purdy v City of New York, 193 NY 521, 523). The Legislature thereby endeavored to safeguard public entities, and concomitantly public funds, against fraudulent and stale claims for injuries to person and property (see Matter of Martin v School Bd. of Union Free Dist. No. 28, Long Beach, 301 NY at 236; Murphy v Village of Fort Edward, 213 NY 397, 400-401; Ortega v New York City Tr. Auth., 170 AD3d 872, 873).
As the Court of Appeals has observed, while "charter schools possess some [*4]characteristics similar to a public entity," charter schools are "a hybrid of sorts," having qualities of both public and private entities (Matter of New York Charter School Assn. v Smith, 15 NY3d 403, 409-410). A school district is a "municipal corporation" and, thus, classified as a "public corporation" (General Construction Law § 66[1], [2]; see id. § 65), whereas a charter school, as alluded to above, is an "education corporation," classified as a corporation formed other than for profit (id. § 66[6]; see id. § 65[c][2]; Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights, 65 AD3d 1342, 1343).
Charter schools do not have the power to "levy taxes or acquire property by eminent domain" (Education Law § 2853[1][e]). They are treated like private schools with respect to purchasing textbooks and supplies and student transportation (see Matter of New York Charter Schools Assn., Inc. v DiNapoli, 13 NY3d at 125 n 4, citing Education Law § 2853).
In addition, "charter schools are not governed by appointees of the government, but by a self-selecting board of trustees that has 'final authority for policy and operational decisions of the school'" (Matter of New York Charter School Assn. v Smith, 15 NY3d at 410, quoting Education Law § 2853[1][f]). For this reason, although charter schools are "funded primarily with public monies," inasmuch as the Charter Schools Act requires school districts to pay "'tuition'" directly to charter schools for each enrolled student who resides in the school district (Matter of New York Charter Schools Assn., Inc. v DiNapoli, 13 NY3d at 126, quoting Education Law § 2856[1][a]), "[t]he money paid by a school district to a charter school is no longer under the State's control once the funds have been transferred" (Matter of New York Charter Schools Assn., Inc. v DiNapoli, 13 NY3d at 133). Furthermore, "[p]rivate persons and organizations are encouraged to provide funding and other assistance to the establishment or operation of charter schools" (Education Law § 2853[4][d]).
More significantly for determination of the issue presented in this case, the Charter Schools Act provides that "no civil liability shall attach to any charter entity [which includes the board of education of a school district (see id. § 2851[3][a])], the board of regents, or to any of their members or employees, individually or collectively, for any acts or omissions of the charter school" (id. § 2853[1][g]). It is further provided that "[n]either the local school district, the charter entity nor the state shall be liable for the debts or financial obligations of a charter school or any person or corporate entity who operates a charter school" (id.). A charter school application must include "[t]ypes and amounts of insurance coverage to be obtained by the school, which shall include adequate insurance for liability, property loss and the personal injury of students" (id. § 2851[2][o] [emphasis added]). Such information then becomes part of the charter, once the application is approved (see id. § 2852[5]).
In contrast, the 1978 legislation amending Education Law § 3813 to include 4201 schools reveals that public responsibility for the "legal liability" incurred by those schools was a concern (Senate Mem in Support, Bill Jacket, L 1978, ch 346 at 5 ["Since legal liability exposure must in the final analysis be reflected in the school budget for which the state of New York pays reimbursement the ultimate cost of this liability is consequently and ultimately borne by the taxpayer"]; Assembly Mem in Support, Bill Jacket, L 1978, ch 346 at 6 [same]; Letter from St Senator John D. Caemmerer to Governor's Counsel, Bill Jacket, L 1978, ch 346 at 8 ["There is no reason to differentiate notice limitations" between public schools and 4201 schools, "since legal liability exposure is reflected in both school budgets, for which the State of New York is automatically responsible"]).
Thus, for the purposes of civil liability, financial obligations, and liability insurance coverage, charter schools are treated as independent from school districts. While the School here emphasizes the term "public school" in the phrase "[a] charter school shall be deemed an independent and autonomous public school," it overlooks the terms "independent and autonomous" (Education Law § 2853[1][c]). Since charter schools are independent from school districts with respect to civil liability, financial obligations, and liability insurance coverage, it stands to reason that the extraordinary safeguards of prelitigation notification of claims applicable to school districts, municipalities and other wholly public entities would not apply to charter schools.
Moreover, while charter schools are required to "meet the same health and safety, civil rights, and student assessment requirements applicable to other public schools" (id. § 2854[1][b]), they are otherwise "exempt from all other state and local laws, rules, regulations or policies governing public or private schools, boards of education, school districts and political subdivisions, including those relating to school personnel and students, except as specifically [*5]provided in the school's charter or in this article" (id.). Charter schools therefore benefit from their independent and hybrid status inasmuch as they do not have to comply with a multitude of laws, regulations, and policies to which school districts must conform. It would be antithetical to allow charter schools to reap this significant benefit of their independence from school districts while also granting them the special protection provided to such public entities wholly governed by state and local laws and policies.
In arguing its entitlement to this protection, the School relies upon certain decisions of federal courts, which have concluded that the notice of claim requirement of Education Law § 3813 "has been extended to charter schools" (Lawton v Success Academy Charter Schs., Inc., 323 F Supp 3d 353, 368 [ED NY]; see Rodriguez v International Leadership Charter Sch., 2009 WL 860622, *6, 2009 US Dist LEXIS 26487, *16 [SD NY, No. 08 Civ. 1012 (PAC)]; Scaggs v New York Dept. of Educ., 2007 WL 1456221, 2007 US Dist LEXIS 35860 [ED NY, No. 06-CV-0799 (JFB) (VVP)]). This conclusion stems from a footnote in the decision in Scaggs v New York Dept. of Educ. (2007 WL 1456221, 2007 US Dist LEXIS 35860 ). The footnote stated, in dicta: "Section 3813 also applies to charter schools . . . , which are defined as 'public' schools under New York Education Law § 2853(1)(c)" (Scaggs v New York Dept. of Educ., 2007 WL 1456221, *19 n 17, 2007 US Dist LEXIS 35860, *69 n 17). The footnote then quotes from the portion of that statute providing: "'A charter school shall be deemed an independent and autonomous public school, except as otherwise provided in this article. The charter entity and the board of regents shall be deemed to be the public agents authorized to supervise and oversee the charter school" (id.). This is the whole of the reasoning on which all of the cited federal decisions depend. For all of the reasons discussed above, we cannot read into the provisions of the Charter Schools Act deeming a charter school an "independent and autonomous public school" and giving the charter entity and the Board of Regents oversight authority, an intent to extend the protection of notice of claim statutes to charter schools (Education Law § 2853[1][c]). Indeed, where our Court of Appeals has been presented with questions as to whether charter schools should be treated as public entities for certain purposes, it has declined to do so (see Matter of New York Charter School Assn. v Smith, 15 NY3d at 410 [concluding that the prevailing wage law mandate of Labor Law § 220 did not apply to charter schools, since charter schools were "significantly less 'public'" than the categories of public entities to which the prevailing wage law applied]; Matter of New York Charter Schools Assn., Inc. v DiNapoli, 13 NY3d at 131 [concluding that the Comptroller lacked the authority to conduct audits of charter schools, and that statutes granting the Comptroller such audit authority were unconstitutional, since, among other reasons, charter schools "are not political subdivisions of the State"]).
It is the hybrid private/public character of charter schools and their independence from school districts that further render this case distinguishable from Bovich v East Meadow Pub. Lib. (16 AD3d 11), on which the School also relies. In that case, this Court concluded that the notice of claim requirements of General Municipal Law §§ 50-i and 50-e applied to the East Meadow Public Library, which was created, housed, and funded by the East Meadow School District. In so concluding, this Court reasoned that the library was "so closely interconnected as to be virtually indistinguishable" from the school district, upon which the library was "completely dependent . . . for its very existence," thereby making the library "a variety of municipal corporation" (Bovich v East Meadow Pub. Lib., 16 AD3d at 19). The same cannot be said of charter schools, designed to "operate independently of existing schools and school districts" (Education Law § 2850[2]; cf. Aurora Contrs., Inc. v West Babylon Pub. Lib., 107 AD3d 922, 923 [the defendant library failed to show that the plaintiff was required to serve it with a notice of claim under Education Law § 3813(1) because it failed to demonstrate that the plaintiff's claims involved "property owned by the West Babylon Union Free School District . . . or relate[d] to the rights or interests of [that] [s]chool [d]istrict"]).
Finally, the School in this case relies upon two decisions in which this Court concluded that the plaintiffs failed to demonstrate that they should be granted discretionary leave to serve late notices of claim on a charter school (see C.A. v Academy Charter Sch., 216 AD3d 1075, 1077; J.G. v Academy Charter Elementary Sch., 204 AD3d 643, 644). To appreciate why these decisions are not dispositive here, it is necessary to understand the role of an appellate court in deciding an appeal. In C.A. and J.G., the plaintiffs did not argue, either in the Supreme Court or on appeal, that the notice of claim requirements of Education Law § 3813 and General Municipal Law §§ 50-i and 50-e were inapplicable to charter schools. To the contrary, the plaintiffs in those cases [*6]affirmatively sought to serve notices of claim upon the charter schools. Thus, the only issue presented to this Court for determination in those cases, as directly expressed in J.G., was "whether the Supreme Court providently exercised its discretion in weighing the factors under General Municipal Law § 50-e(5)" (relating to the service of late notices of claim) (J.G. v Academy Charter Elementary Sch., 204 AD3d at 644).
Since the plaintiffs in those cases did not dispute the applicability, in the first instance, of the notice of claim requirements, this Court had no occasion to determine that question in those cases. As explained by the Court of Appeals:
"[T]o decide [an] appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play. We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made" (Misicki v Caradonna, 12 NY3d 511, 519).
If this Court had addressed the question of whether notices of claim were, in the first instance, required as a condition precedent for a tort action against a charter school in C.A. and J.G., we would have deprived the charter school defendants in those cases of the opportunity to make arguments in favor of that proposition, as the School in the present case has been able to do here. In short, C.A. and J.G. did not decide the issue of first impression presented in the instant case, and thus, those cases are not relevant to the resolution of that question (see Bovich v East Meadow Pub. Lib., 16 AD3d at 18 [concluding that prior cases concerning the propriety of amendments to notices of claim served upon public libraries provided no authority for the defendant library's contention that service of a notice of claim was a condition precedent to suit against it, since it was assumed by the parties in the prior cases that service of a notice of claim was required]).
Since we conclude that the plaintiffs here were not required to serve a notice of claim before commencing this action against the School, the Supreme Court properly denied that branch of the School's motion which was pursuant to CPLR 3211(a) to dismiss the complaint.
2. Motion for Summary Judgment
The Supreme Court also properly denied that branch of the School's motion which was for summary judgment dismissing the complaint on the merits. "Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (Mirand v City of New York, 84 NY2d 44, 49). However, "[s]chools are not insurers of safety" (id.). Thus,
"[i]n determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated" (id.; see Buchholz v Patchogue-Medford School Dist., 88 AD3d 843, 844).
"Even if a breach of the duty of supervision is established, it must [also] be demonstrated that such negligence was a proximate cause of the injuries sustained" (K.J. v City of New York, 156 AD3d 611, 613; see Mirand v City of New York, 84 NY2d at 49). "The test for causation is 'whether under all the circumstances the chain of events that followed the negligent act or omission was a normal or foreseeable consequence of the situation created by the school's negligence'" (K.J. v City of New York, 156 AD3d at 613, quoting Mirand v City of New York, 84 NY2d at 50).
Contrary to the School's contention, it failed to demonstrate, prima facie, that the dangerous conduct which caused the injuries was unforeseeable. Instead, triable issues of fact exist as to whether the prior conduct complained of by A.P. and her mother was sufficiently similar to the injury-causing conduct to put the School on notice of "the fellow students' potential for causing harm" in the hallways between and after classes (K.J. v City of New York, 156 AD3d at 614; see RT v Three Vil. Cent. Sch. Dist., 153 AD3d 747, 748). Similarly, the School failed to demonstrate, prima facie, that any lack of supervision on its part was not a proximate cause of A. P.'s injuries (see K J. v City of New York, 156 AD3d at 614-615). Indeed, the evidence demonstrated that the School [*7]recognized the need to have staff stationed in the hallways to monitor the students during class transitions. The evidence presented triable issues of fact as to whether there were monitors present in the hallway at the time of the incident as required by the School's policies and procedures and whether the presence of such monitors could have prevented the alleged pushing incident (see id.).
The School's remaining contentions regarding that branch of its motion which was for summary judgment dismissing the complaint are without merit. Since the School failed to demonstrate its prima facie entitlement to judgment as a matter of law dismissing the complaint, the Supreme Court properly denied that branch of its motion which was for summary judgment dismissing the complaint regardless of the sufficiency of the plaintiffs' opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851).
Accordingly, the order is affirmed.
DILLON, J.P., WAN and TAYLOR, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court