OPINION OF THE COURT
John M. Curran, J.
Petitioners commenced this CPLR article 78 proceeding to review and annul the February 14, 2011 decision and order of the New York Public Employment Relations Board (PERB) relating to PERB case Nos. C-5672, E-2429, and C-5878 (Matter of Council of School Supervisors & Adm’rs, Local 1 AFSA [Brooklyn Excelsior Charter School], 44 PERB ¶ 3001 [2011]). Petitioners assert that the decision was affected by substantial errors of law, was arbitrary and capricious, and was an abuse of discretion. Petitioners also seek a declaration under CPLR 3001 that the decision is a substantial impairment of contractual rights entered into between petitioners in violation of the Contract Clause of the United States Constitution, article I, section 10.
The Parties
Petitioners Buffalo United Charter School (BUGS) and Brooklyn Excelsior Charter School (BECS) are two independent 501 (c) (3) nonprofit education corporations, located in Buffalo and Brooklyn, respectively, that were formed under Education Law article 56 (hereinafter referred to as the Charter Schools Act). Petitioner National Heritage Academies, Inc. (NHA) is a private, for-profit corporation that entered into “Management Agreements” for the operation of the schools formed by BUGS and BECS. Under the management agreements, NHA is responsible for employing the staff at BUGS and BECS.
BUGS and BECS were both formed in 2002 and provide education to students in the kindergarten through eighth grade. *297 BUGS is in its ninth year of operation whereas BEGS is in its tenth year of operation. Both BUGS and BEGS were formed upon the petition of community leaders. Once the charters were issued by the State University of New York Board of Trustees (SUNY), the community leaders became the board of trustees for each of the two schools. As provided for in the application to SUNY, both BUGS and BEGS contracted with NHA whereby NHA would manage the schools. The record is replete with references to NHA’s management functions performed in operating the schools.
PERB is an independent state agency created pursuant to the Public Employees’ Fair Employment Act (Civil Service Law § 200 et seq.) (the Taylor Law or the Act). Respondent Council of School Supervisors and Administrators, Local 1, AFSA (CSA) is a New York City based labor organization representing principals, assistant principals, supervisors and education administrators who work in the New York City public schools. CSA is seeking to be certified as the collective bargaining representative for a unit of unrepresented assistant principals at BEGS. Respondent Buffalo United Charter School Education Association, NYSUT/AFT, AFL-CIO (Association) is a union with offices in Buffalo, New York, that is seeking to be certified as a collective bargaining representative of a unit of unrepresented instructional employees at BUGS.
Procedural Background
In December of 2006, CSA filed with PERB a petition seeking to be certified as the collective bargaining representative of all assistant principals working for BEGS. In January of 2007, BEGS and NHA filed with PERB an application for the designation of the assistant principals at issue as “managerial” or “confidential” as those terms are defined in Civil Service Law § 201 (7) (a). BEGS and NHA reserved their objections to PERB’s jurisdiction with respect to their application.
In March of 2009, the Association filed with PERB a petition to be certified as the collective bargaining representative of a unit of unrepresented instructional employees at BUGS. NHA and BUGS responded to this application for certification while reserving their objection to PERB’s jurisdiction.
In June of 2009, a PERB Administrative Law Judge (ALJ) determined that PERB had jurisdiction over the petitions involving BEGS. The ALJ in the BEGS matter also determined that the assistant principals at issue were “confidential” em *298 ployees under the Taylor Law, although they were not “managerial” employees.
In February of 2010, a different PERB ALJ held that PERB did not have jurisdiction over the BUGS matter because the employees were jointly employed by NHA and BUGS.
The parties pursued joint proceedings before PERB with respect to the above-described issues. On February 14, 2011, PERB issued its decision determining that it had jurisdiction over BUGS and BEGS. PERB also rejected petitioners’ arguments that the National Labor Relations Board (NLRB) has preemptive jurisdiction over NHA, BUGS and BEGS pursuant to the National Labor Relations Act (NLRA). It further determined that the assistant principals at issue were neither managerial nor confidential. It is these determinations which are contested in this proceeding.
The Parties’ Contentions
Petitioners argue that PERB is prevented by its own joint public-private employment doctrine from asserting jurisdiction over the cases and employees at issue. According to petitioners, PERB erroneously concluded that the Charter Schools Act precludes the application of that doctrine. Petitioners point to the absence of any exception or limitation in the Charter Schools Act pertaining to the joint public-private employment doctrine. They also assert that, because the Legislature is presumed to have been aware of the joint public-private employment doctrine at the time it adopted the Charter Schools Act, the absence of any direct statement in the law regarding the doctrine is sufficient evidence of an intent to allow the doctrine to be applied with respect to charter schools.
Petitioners further claim that PERB lacks jurisdiction because it is preempted by the NLRA. Because NHA is an employer pursuant to its management agreements with the subject schools, and because NHA is a private entity, petitioners argue that PERB must yield to NLRB’s jurisdiction. Petitioners also urge the court to reject PERB’s conclusion that charter schools are a “political subdivision of the state” under the NLRA and therefore exempt from NLRB jurisdiction.
Petitioners also assert that PERB erroneously found that the Charter Schools Act prevents the designation of the assistant principals at issue as “managerial” or “confidential.” The assistant principals, according to petitioners, are members of the executive team at the subject charter schools and therefore PERB wrongly denied their “managerial” or “confidential” status.
*299 Lastly, petitioners rely upon the Contract Clause in the United States Constitution (art I, § 10) to claim that PERB’s decision impairs the obligations under the management agreements between NHA and the charter schools to such a substantial extent as to be constitutionally unenforceable. Petitioners argue that, by declaring the charter schools to be the sole employers of their employees, PERB has negated NHA’s role entirely with respect to the operation and management of the schools.
Respondents contend that PERB properly concluded that the Charter Schools Act “explicitly and implicitly makes the Act [the Taylor Law] applicable to every New York charter school” (44 PERB 1i 3001 at 27) and that PERB’s “joint public-private employer relationship precedent . . . has been superseded” by the Charter Schools Act (44 PERB 1i 3001 at 29). According to respondents, PERB’s joint public-private employment doctrine is inconsistent with the Charter Schools Act and therefore explicitly superceded by Education Law § 2854 (1) (a). Moreover, respondents maintain that Education Law § 2854 (3) (a) mandates that charter schools are public schools for purposes of the Act and that, because the Legislature made no provision for an exception to this mandate, there is no authority permitting application of the joint public-private employment doctrine.
Respondents further argue that the Legislature did not intend that any charter school be governed by the NLRA. According to respondents, carving out charter schools, such as petitioners, which have established a partnership with a private entity, such as NHA, from PERB’s jurisdiction would lead to unintended and unreasonable consequences such as affording certain charter school employees the right to strike but not others.
Respondents also assert that PERB’s conclusion that the Charter Schools Act does not authorize the designation of “managerial” and “confidential” employees is a proper legal conclusion. Respondents further urge the court to apply a deferential standard of review to PERB’s conclusion in this regard.
Finally, respondents contend that there is no unconstitutional impairment of the management agreements between NHA and its charter schools because, even with PERB exercising jurisdiction over the charter school employees, NHA’s role under the agreements is not materially diminished. Accordingly, respondents assert that the alleged impairment is constitutionally insignificant, if there is any impairment at all.
*300 The Charter Schools Act
The Charter Schools Act was adopted in December of 1998 and became effective immediately. Its purpose was to “authorize a system of charter schools” that would “operate independently of existing schools and school districts” to accomplish specified objectives (Education Law § 2850 [2]). The Charter Schools Act authorized various types of applicants to seek a charter and provided that such an application “may be filed in conjunction with a . . . for-profit business or corporate entity authorized to do business in New York state” (Education Law § 2851 [1]). Once SUNY approves the issuance of a charter, the Board of Regents incorporates the charter school as an education corporation (Education Law § 216-a [1] [a]; § 2853 [1]).
The Charter Schools Act makes various statements concerning the status of charter schools as both public and private. Under the terms of the Charter Schools Act, a charter school is deemed “an independent and autonomous public school” (Education Law § 2853 [1] [b-1] [C]) with powers granted under the Charter Schools Act which “constitute the performance of essential public purposes and governmental purposes of this state” (Education Law § 2853 [1] [d]). In other portions of the Charter Schools Act, charter schools are treated as nonpublic such as for purposes of local zoning and land use regulation and with respect to private assistance thereto.
The Court of Appeals has addressed this hybrid status of charter schools as both public and private in two decisions. In Matter of New York Charter Schools Assn., Inc. v DiNapoli (13 NY3d 120 [2009]), the Court held that charter schools are not political subdivisions of the state and that the task of auditing charter schools was not incidental to audits of public school districts. In Matter of New York Charter School Assn. v Smith (15 NY3d 403 [2010]), the Court held that charter schools are not “public entities” as defined in Labor Law § 220 subject to the prevailing wage rate requirements under article I (§17) of the State Constitution.[1] In neither case did the Court of Appeals address the specific subject matter raised by the parties here.
*301 PERB based its decision on its construction of the Charter Schools Act and, in particular, on the following provisions contained therein:
“§ 2854. General requirements
“1. Applicability of other laws, (a) Notwithstanding any provision of law to the contrary, to the extent that any provision of this article is inconsistent with any other state or local law, rule or regulation, the provisions of this article shall govern and be controlling. . . .
“3. School personnel, (a) An employee of a charter school shall be an employee of the education corporation formed to operate the charter school and not an employee of the local school district in which the charter school is located. An employee of a charter school shall be deemed to be a public employee solely for purposes of article fourteen of the civil service law, except for section two hundred twelve of such law, and for no other purposes unless otherwise specified in this article, the board of trustees of the charter school shall constitute a board of education solely for purposes of article fourteen of the civil service law, except for section two hundred twelve of such law, and for no other purposes unless otherwise specified in this article, a charter school shall be deemed to be a public employer solely for purposes of article fourteen of the civil service law, except for section two hundred twelve of such law, and for no other purposes unless otherwise specified in this article, and the chief executive officer of the charter school shall be the person designated as such by the board of trustees of the charter school.”
“§ 2855. Causes for revocation or termination . . .
“When the public employment relations board makes a determination that the charter school demonstrates a practice and pattern of egregious and intentional violations of subdivision one of section two hundred nine-a of the civil service law involving interference with or discrimination against employee rights under article fourteen of the civil service law” (Education Law § 2855 [1] [d]).
The Taylor Law and the Joint Public-Private Employment Doctrine
PERB’s joint public-private employment doctrine derives from Matter of New York Pub. Lib., Astor, Lenox & Tilden Founds, v *302 New York State Pub. Empl. Relations Bd. (37 NY2d 752 [1975]). There, the Court of Appeals held: “the Taylor Law applies only to employment which is unequivocally or substantially public” (37 NY2d at 753). Where an employment relationship involves joint public and private employers, PERB has declined jurisdiction on the premise that it has no jurisdiction unless each of the joint employers is itself a public employer (Matter of Niagara Frontier Transp. Auth. [Niagara Frontier Transp. Auth. Peace Officers’ Benevolent Assoc.], 13 PERB ¶ 3003 [1980]; Matter of United Univ. Professions [State of New York], 35 PERB ¶ 3019 [2002]; Matter of Local 342, Long Is. Pub. Serv. Empls., United Mar. Div., Intl. Longshoremen’s Assoc., AFL-CIO [Suffolk County Vanderbilt Museum], 24 PERB ¶ 4014 [1991]). PERB also has recognized the application of this doctrine in the context of schools (Matter of Service Empls. Intl. Union, Local 200-D, AFL-CIO, CLC [Berkshire Farm Union Free School Dist.], 23 PERB ¶ 4035 [1990]; Matter of Mamaroneck Teachers’ Assoc. [Mamaroneck Union Free School Dist.], 38 PERB ¶ 4016 [2005]). While loosely rooted in Civil Service Law § 201 (6) (b), PERB’s counsel explained at oral argument that the joint public-private employment doctrine “is essentially decisional law made by PERB.”
Here, PERB has expressly acknowledged that, if the joint public-private employment doctrine is applicable, NHA’s role at both BEGS and BUGS would demonstrate a joint public-private employer relationship depriving PERB of jurisdiction with respect to the charter schools.
Discussion
a. PERB Jurisdiction
The critical issue in this proceeding is whether the Charter Schools Act precludes PERB from following its own jurisprudence in applying the joint public-private employment doctrine. This issue must first be analyzed within the plain language of the Charter Schools Act without resort to principles of construction and interpretation. “[W]hen the words of a statute have a definite and precise meaning, such meaning cannot be extended or restricted by conjecture, or under the guise or pretext of interpretation. It is not allowable to interpret that which has no need of interpretation” (Mushlitt v Silverman, 50 NY 360, 361-362 [1872], citing McCluskey v Cromwell, 11 NY 593 [1854]; McKinney’s Cons Laws of NY, Book 1, Statutes § 76).
The Charter Schools Act makes no mention of the joint public-private employment doctrine. There is, therefore, no basis in *303 the language of the Charter Schools Act to conclude that the Legislature addressed this doctrine in enacting the statute. While the parties debate the effect or meaning of this legislative silence, it does not change the fact of silence. Rather, by debating the effect or meaning of this silence, the parties have invited the court to construe and interpret the statute. Further, through its silence on the issue, the Legislature has compelled the court to do so.
PERB interprets the legislative silence to mean that the Charter Schools Act
“does not recognize or countenance a joint public-private employer relationship or a joint public employer relationship under § 201.6(b) of the Act [Taylor Law] at a charter school. If the Legislature intended to permit exceptions to the statutory mandate that charter school employees are employees of a single public employer for purposes of the Act, it could have done so explicitly” (44 PERB If 3001 at 31).
PERB concludes that Education Law § 2854 (3) (a) explicitly provides for charter schools to be solely public employers, and not joint public-private employers, by reading into the statute the words “sole” or “only” with respect to the description of a charter school being deemed “a public employer” for purposes of the Taylor Law. PERB does so despite the rule of general construction which would read the language of “o” public employer to include the plural as well as the singular (General Construction Law § 35). PERB also thereby failed to follow the rules of construction prohibiting changes to the wording of the statute by other than a legislative act (see Matter of Metropolitan Life Ins. Co. v Boland, 281 NY 357, 361 [1939]; Statutes §73).
Petitioners interpret the legislative silence regarding the joint public-private employment doctrine as meaning the Legislature left it in place. According to petitioners, the absence of an exception or limitation in the Charter Schools Act with respect to the doctrine is to be read as intentional (see Matter of Reports of Apr. 30, 1979 Grand Jury of County of Montgomery, 108 AD2d 482, 484 [3d Dept 1985]; Matter of Grossman v Herkimer County Indus. Dev. Agency, 60 AD2d 172, 178 [4th Dept 1977]). Furthermore, because the Legislature is presumed to be aware of the law in existence at the time it enacted the Charter Schools Act (Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 373 [2007]), petitioners assert that the Legislature *304 intended to give effect to the doctrine by not explicitly addressing it.
Petitioners’ argument is supported by the language of Education Law § 2854 (3) (a), which states that the Taylor Law applies to charter schools. Because that law as a whole applies, petitioners urge that so too does the joint public-private employment doctrine which was established by PERB pursuant to its application of the Taylor Law.
Respondents counter by asserting that petitioners’ argument does not construe the Charter Schools Act as a whole and does not give meaning to all parts of the statute as required by rules of statutory construction (Golden v Koch, 49 NY2d 690, 694 [1980]; Statutes §§ 97, 98). Respondents point out that Education Law § 2854 (3) (a) provides that “[a]n employee of a charter school shall be deemed to be a public employee” under the Taylor Law and that a “charter school shall be deemed to be a public employer” under that law. Because “public employee” and “public employer” are defined terms in the Taylor Law, and expressly governed by that statute, respondents claim that there is no room in the Charter Schools Act for any exception to the application of the Taylor Law through the joint public-private employment doctrine.
Respondents also rely upon the language of Education Law § 2854 (3) (c-2) which states that charter schools are required to follow principles of “employer neutrality” as guaranteed by recourse to Civil Service Law § 209-a regarding “improper employer practices.” This guarantee is further solidified by the possibility a charter would be terminated under Education Law § 2855 (1) (d) based on a “practice and pattern of egregious and intentional violations” of Civil Service Law § 209-a (1) “involving interference with or discrimination against employee rights” under the Taylor Law.
According to respondents, by requiring PERB to exercise jurisdiction over “improper practices” for charter schools under Civil Service Law § 209-a, including for purposes of terminating a charter, the Legislature demonstrated its intent that PERB would not decline jurisdiction under the joint public-private employment doctrine. In that way, according to respondents, the joint public-private employment doctrine is inconsistent with and contrary to the Charter Schools Act in violation of Education Law § 2854 (1) (a).
Petitioners seek to remedy this inconsistency between the joint public-private employment doctrine and Education Law *305 § 2854 (3) (c-2) and Education Law § 2855 (1) (d) by arguing that PERB plays no role with respect to charter schools who applied for their charters in conjunction with private entities. Under this argument, PERB would retain jurisdiction for all charter schools who did not apply for a charter in conjunction with a private entity but lose jurisdiction for all charter schools such as petitioners who did so. Petitioners’ counsel agreed at oral argument that this interpretation would render Education Law § 2855 (1) (d) inapplicable to his clients or other charter schools who are associated with private entities. As acknowledged by petitioners’ counsel at oral argument, this would essentially abrogate Education Law § 2855 (1) (d) as a basis for charter termination with respect to schools such as petitioners.
Petitioners’ argument in this regard must be rejected because it fails to give effect to the clear language of Education Law § 2854 (3) (c-2) and § 2855 (1) (d). These provisions apply generally to charter schools and do not contain any language showing a legislative intent to exempt charter schools, such as petitioners, who have applied for a charter in conjunction with a private entity.
The court is cognizant of the well-established principle of statutory construction that two statutes should be construed, if at all possible, in such a manner as to give effect to both (People v Newman, 32 NY2d 379, 389-390 [1973], cert denied 414 US 1163 [1974]; People v Mann, 31 NY2d 253, 257-258 [1972]; Knapp v Monroe County Civ. Serv. Commn., 77 AD2d 817, 818 [4th Dept 1980], lv denied 51 NY2d 708 [1980]). Here, it is conceptually possible to read the Charter Schools Act and the Taylor Law together to give effect to the joint public-private employment doctrine, the Taylor Law and the Charter Schools Act. For example, it is conceivable that PERB could be deprived of jurisdiction under the joint public-private employment doctrine (including for charges of improper practices) but that the Taylor Law would otherwise apply to charter schools and their employees. For example, Civil Service Law § 210 (1) prohibits public employees from going on strike. It is possible to read the Taylor Law and the Charter Schools Act together to prohibit a strike by charter school employees but also deprive PERB of jurisdiction under the joint public-private employment doctrine. This conceptual possibility would counter PERB’s point that the Legislature could not have intended to authorize charter school employees to strike without a much clearer legislative direction.
*306 However, this effort to read the joint public-private employment doctrine, the Taylor Law and the Charter Schools Act together is contradicted by the full ramifications of the application of the doctrine which, as all parties to this proceeding agree, would cause the Taylor Law to be entirely inapplicable to employees of charter schools who have affiliated with a private entity. As noted in petitioners’ brief,[2] and based on the statements made at oral argument, it is clear that the implication of the joint public-private employment doctrine results in the Taylor Law being wholly inapplicable to the employer and its employees. In that situation, the employer and its employees are relegated to the field of private employment governed by the NLRA and the NLRB. In essence, with respect to the application of the Taylor Law, the joint public-private employment doctrine is an all or nothing proposition. Accordingly, it is impossible to construe the joint public-private employment doctrine together with application of the Taylor Law via the provisions of the Charter Schools Act.
Based on this analysis, the joint public-private employment doctrine is inconsistent with and contrary to the Charter Schools Act which makes the Taylor Law applicable to charter schools and invokes the jurisdiction of PERB at least with respect to improper practices. Based on the language in Education Law § 2854 (1), the court concludes that the Legislature intended to preempt the conflicting application of the joint public-private employment doctrine with respect to charter schools (see People v Mitchell, 15 NY3d 93, 97 [2010]).
Furthermore, the court is not authorized to construe the Charter Schools Act to render any portion of it ineffective without clear legislative guidance (Statutes § 144). Here, under petitioners’ argument, Education Law § 2854 (3) (c-2) and § 2855 (1) (d) would be rendered ineffective as to schools such as petitioners. It also would be unreasonable to conclude that the Legislature intended to allow charter schools, such as petitioners, who affiliate with a private entity to strike whereas the employees of other charter schools would be prohibited from doing so. Such a change in the long-established rule prohibiting employees funded by public monies from striking would require a definitive legislative declaration and any other conclusion would allow an unreasonable result (Statutes §§ 143, 153).
*307 Accordingly, while petitioners’ argument is not entirely without merit, the court is compelled to conclude that the consequences of petitioners’ interpretation of the Charter Schools Act would render portions of that statute ineffective, would cause unreasonable and unintended results, and change a long-established rule without clear legislative direction. For these reasons, the court concludes that the joint public-private employment doctrine is inconsistent with and contrary to the Charter Schools Act and therefore inapplicable to the petitioners.
b. NLRA Preemption
Petitioners assert that NHA is at least a joint employer of petitioners’ employees and, because NHA is a private entity, the NLRA has exclusive jurisdiction.[3] Petitioners also dispute PERB’s conclusion that all charter schools, including petitioners, are “political subdivisions of the state” exempt from NLRB’s jurisdiction.
While the court has already decided that PERB has jurisdiction here and that the joint public-private employment doctrine is inconsistent with and contrary to the Charter Schools Act, the parties agree that this is not determinative of whether PERB’s jurisdiction is preempted by the NLRA. The issue remains whether, under 29 USC § 152 (2), charter schools, including BUGS and BEGS, are exempt from NLRB jurisdiction as “political subdivisions of the state.”
The parties further agree that the controlling federal precedent is NLRB v Natural Gas Util. Dist. of Hawkins Cty. (402 US 600 [1971]). There, the Supreme Court held that an employer will be considered a “political subdivision of the state” if it is: “(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.” (NLRB v Natural Gas Util. Dist. of Hawkins Cty., 402 US 600, 604-605 [1971].)
This test is established federal precedent interpreting and applying the NLRA. Consequently, PERB correctly concluded that the two Court of Appeals cases pertaining to charter schools are not controlling on the issue of whether charter schools are a “political subdivision” of New York State for purposes of the *308 NLRA. [4] The definition of a “political subdivision” under the NLRA has a distinct meaning under the standards developed by the NLRB and the federal courts.
While not made clear in PERB’s decision, PERB’s brief in this proceeding essentially concedes that the basis of PERB’s decision was pursuant to the second Hawkins County test pertaining to whether charter schools are “administered by individuals who are responsible to public officials or to the general electorate.”
Petitioners attack this conclusion by pointing to NLRB precedent indicating that the relevant inquiry for determining whether an entity is “administered by individuals who are responsible to public officials or to the general electorate” is whether the entity’s governing body is appointed by and subject to removal by public officials (see Charter School Admin. Servs., Inc. [Michigan Educ. Assoc./NEA], 353 NLRB No. 35 [2008]). On this basis, petitioners argue that BUGS and BEGS do not fit this definition. PERB does not dispute this conclusion but rather claims that the NLRB does not end its inquiry there but also looks to the state enabling legislation, the statutory scheme, and the legislative intent. By analyzing the Charter Schools Act, PERB concluded that BUGS and BEGS are “political subdivisions of the state” pursuant to the NLRA and are therefore exempt from NLRB jurisdiction.
The issue of whether charter schools across the country are within NLRB’s jurisdiction is a very unsettled issue at the NLRB. In January of 2011, the NLRB invited briefs regarding its jurisdiction over charter schools. NLRB’s Web site, referenced by PERB in its decision, reflects that competing briefs have been submitted to the NLRB on the subject but that no decision has yet been rendered by the NLRB. Under these circumstances, the court must avoid substituting another interpretation of the NLRA and should avoid speculating as to what the NLRB or federal courts might do (Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46 [1974]). Further, given the unsettled federal law on this issue and the well researched analysis by PERB, the court cannot conclude as a matter of law that PERB’s decision was arbitrary or clearly contrary to the law (Matter of Davison v Segur, 24 AD2d 797 [3d Dept 1965]). For these reasons, the court denies the relief requested by petitioners to *309 determine that PERB’s decision on the NLRB jurisdictional issue should be annulled,
c. “Managerial” or “Confidential” Status
PERB decided that the specific provision of the Taylor Law authorizing a public employer to designate “managerial” or “confidential” employees (Civil Service Law § 201 [7] [a]) is inconsistent with or contrary to the general language in the Charter Schools Act stating that “an employee of a charter school shall be deemed to be a public employee” (Education Law § 2854 [3] [a]). PERB also decided that the “chief executive officer” of a charter school is the only position excepted from the ambit of a “public employee” under the Charter Schools Act even though there is no exception language contained therein. To support its decision on this issue, PERB analogizes to statutes creating particular public benefit corporations and public authorities under circumstances quite different than presented here.
As an alternative basis for precluding BECS from designating “managerial” and “confidential” employees, PERB concludes that BECS’s evidence was insufficient. This conclusion was premised on BECS’s purported failure to designate a chief executive officer and/or to delegate decision-making authority to the assistant principals in question.
As with the question of PERB’s jurisdiction, the court does not see any specific provision pertaining to this issue in the Charter Schools Act. Rather, a plain and common sense reading of the Charter Schools Act (Education Law § 2854 [3] [a]) is that the Legislature intended to have the Taylor Law applicable to charter schools. In applying the Taylor Law to charter schools, the Legislature did not employ any language precluding the designation of “managerial” or “confidential” employees. PERB’s overbroad interpretation of Education Law § 2854 (3) (a) to mean that all charter schools’ employees are public employees and therefore not “managerial” or “confidential,” except for the chief executive officer, is not supported by the language and structure of the Charter Schools Act or the intent evidenced thereby.
PERB based its decision regarding its jurisdiction largely on the view that the Charter Schools Act did not exhibit any legislative intent to distinguish between charter schools affiliated with private entities such as NHA and ones that did not. Ironically, by seizing on legislative silence, PERB extrapolates a legislative intent to treat charter schools and traditional public *310 schools completely differently for purposes of the designation of “managerial” and “confidential” employees. Just as the court agreed with PERB that the Charter Schools Act did not decree any such distinction among charter schools, the court concludes that PERB committed a substantial legal error in determining that the Charter Schools Act decrees such an important distinction between traditional public schools and charter schools.
Moreover, PERB’s conclusion that the designation of the assistant principals at issue as “confidential” is not supported by the evidence is clearly erroneous and directly contradicted by PERB’s own ALJ who conducted a lengthy hearing on the issue. There is nothing in the Charter Schools Act requiring BECS to designate a chief executive officer before employees can be determined to be “managerial” or “confidential” under the Taylor Law. PERB’s decision also is a classic example of form over substance in that the record overwhelmingly establishes that BECS’s principal, Thomas DeMarco, serves in the capacity of chief executive officer of the school, pursuant to NHA’s designation. In essence, BECS has delegated the functional portions of its management responsibilities to NHA pursuant to the managerial contract which was approved as part of the charter issuance process. In turn, NHA has employed Mr. DeMarco to serve in the functional capacity of a chief executive officer pursuant to the Charter Schools Act. The absence of a formal designation by the BECS Board of Trustees in this regard is immaterial.
Similarly, the absence of any formal resolution by the BECS Board of Trustees authorizing the exercise of decision-making authority by the assistant principals in question is another example of PERB ignoring the unrefuted evidence presented to the ALJ. The record substantially demonstrates that the assistant principals were functioning in a “confidential” capacity as determined by the ALJ. By the same token, the court sees no basis upon which to disturb the ALJ’s determination that the record was insufficient to establish that the assistant principals in question were functioning in a “managerial” capacity. The court therefore rejects PERB’s conclusions with respect to the issue of “managerial” and “confidential” employees and reinstates the ALJ’s decision in this regard,
d. Impairment of Contracts
At oral argument it became clear that the primary issue with respect to petitioners’ claim that the decision impairs the obligation of the management agreements between NHA and BUGS/ *311 BEGS is the extent to which the decision impairs the obligations thereunder. Petitioners argue that the impairment is so substantial as to entirely abrogate the agreements. According to petitioners, the decision mandates that BUGS and BEGS, as the education corporations created pursuant to the Charter Schools Act, are the employers of the charter school employees for all purposes including, by way of example, under the Workers’ Compensation Law, etc.
The court does not read the decision so broadly. Rather, the decision provides that, for purposes of application of the Taylor Law pursuant to the terms of the Charter Schools Act, BUGS and BEGS are to be treated as the employers. The decision did not address, nor would PERB have jurisdiction to decide, any questions outside what is permitted under the Taylor Law. The decision does not amount to an edict declaring that BUGS and BEGS are employers for all purposes under New York law and does not disengage NBA from the substantial management role it plays pursuant to the contracts with the charters schools.
The Charter Schools Act expressly allows the type of partnership entered into here between NBA and the charter schools. Further, SUNY approved the structure of the arrangement between NHA and the charter schools as part of the charter application process. In essence, while BUGS and BEGS maintain their status as the employers for purposes of application of the Taylor Act, the operational and management functions performed have been delegated by BUGS and BEGS to NHA pursuant to the terms of the contracts. There is no prohibition in the Charter Schools Act to such a delegation of function and the court does not read the decision to do so.
Based on this analysis, the court declines to issue a declaratory judgment as requested by petitioners.
Conclusion
Based on the foregoing, the petition is denied except that PERB’s decision that the assistant principals at BEGS are neither “managerial” nor “confidential” employees is annulled and the ALJ’s decision on that issue is reinstated. The language of the judgment should be settled between the parties on notice.

. As to charter schools generally, the Court observed: (1) “[w]e recognize that charter schools possess some characteristics similar to a public entity”; (2) “|w]hen the Legislature intended charter schools to be subject to particular laws governing public entities, it has said so”; (3) “the status of charter schools has often been difficult to define because they may not be easily identified as either a purely private or public entity”; and (4) “charter schools are a hybrid of sorts” (15 NY3d at 409-410).

. “Where there is joint employment by a public and private employer, charter school employees, like any other employee in such a joint employment situation, are simply not covered by the Taylor Law and must proceed under the NLRA” (petitioners’ mem of law at 21).

. Notably, although petitioners assert that the NLRB has exclusive jurisdiction, petitioners have not made any effort to have the NLRB assert its jurisdiction or to obtain an opinion from the NLRB on the issue.

. Matter of New York Charter Schools Assn., Inc. v DiNapoli (13 NY3d 120 [2009]); Matter of New York Charter School Assn. v Smith (15 NY3d 403 [2010]).