Matter of Executive Cleaning Servs. Corp. v New York State Dept. of Labor (2021 NY Slip Op 00461)





Matter of Executive Cleaning Servs. Corp. v New York State Dept. of Labor


2021 NY Slip Op 00461


Decided on January 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 28, 2021

529096

[*1]In the Matter of Executive Cleaning Services Corporation et al., Petitioners,
v
New York State Department of Labor et al., Respondents.

Calendar Date: January 11, 2021

Before: Lynch, J.P., Clark, Mulvey, Pritzker and Colangelo, JJ.


Michael D. Diederich Jr., Stony Point, for petitioners.
Letitia James, Attorney General, New York City (Jessica Agarwal of counsel), for respondents.



Lynch, J.P.
Combined proceeding pursuant to CPLR article 78 and action for declaratory judgment (transferred to this Court by order of the Supreme Court, entered in Albany County) to, among other things, review a determination of respondent Commissioner of Labor finding, among other things, that petitioners failed to pay prevailing wages and supplements.
Pursuant to the terms of an oral agreement, petitioner Executive Cleaning Services Corporation employed six individuals to perform cleaning services at the Ossining Public Library between December 2014 and October 2015. Prior to entering into the contract, the library did not represent that it was a public agency or that the prevailing wage law applied. Executive Cleaning paid the employees $10 per hour for their service, less than the prevailing wage. In or around October 2015, the library received a complaint from one of the employees alleging that Executive Cleaning had failed to provide compensation for the work performed under the contract.[FN1] In response, the library's Board of Trustees sent a letter to petitioner Cef Saiz — Executive Cleaning's sole shareholder — informing him of the complaint and advising that, as a public employer subject to Labor Law article 9, the library would withhold final payment under the contract until it received documentation of Executive Cleaning's certified payroll records. The library also notified respondent Department of Labor (hereinafter the Department) of the employee's complaint, prompting the Bureau of Public Work to commence an investigation. Upon review, the Bureau concluded that the contract was subject to the prevailing wage provisions of Labor Law article 9.
The Department then sent a notice of hearing to petitioners scheduling an evidentiary hearing on the matter for December 2017. In response, petitioners moved to dismiss the administrative proceeding for lack of jurisdiction, alleging, among other things, that the notice of hearing was jurisdictionally defective and the library was not a "public agency, public benefit corporation, or other public entity covered by prevailing wage provisions." Following an evidentiary hearing, a Hearing Officer issued a report and recommendation denying petitioners' motion to dismiss and determining that the contract was subject to the prevailing wage provisions of Labor Law article 9, finding, among other things, that the library was a public agency within the meaning of Labor Law § 230 (3) insofar as it was established by official action of a school district as a "public library," rather than as a private "association library" (see Education Law § 253). In accordance with that finding, the Hearing Officer assessed an underpayment of $16,671.57 in wages and supplements, and determined that the underpayment was non-willful "[g]iven [Executive Cleaning's] inexperience, and [the library's] failure to provide a written contract and prevailing wage-rate schedules." The Hearing Officer also recommended that Executive [*2]Cleaning be assessed interest in the amount of 6% per annum on its underpayment, as well as a civil penalty in the amount of 5% of the underpayment and interest (see Labor Law § 235 [5] [b], [c]). Respondent Commissioner of Labor adopted the Hearing Officer's findings and recommendations in full.
Petitioners thereafter commenced this combined CPLR article 78 proceeding and action for declaratory judgment challenging the Commissioner's findings and seeking, among other things, a declaration that the contract was not subject to the prevailing wage provisions of Labor Law article 9 because the library is not a public agency as specified in Labor Law § 230 (3) and the work performed was not "construction-like" labor.[FN2] Respondents joined issue and the proceeding was transferred to this Court.
Initially, we reject petitioners' argument that the notice of hearing was defective because it failed to set forth the basis of the Department's jurisdiction. Petitioners maintain that the notice of hearing was defective for failing to allege that the library was a public agency subject to the prevailing wage law or that an Executive Cleaning employee filed a complaint with the Department alleging nonpayment of prevailing wages. State Administrative Procedure Act § 301 (2) (b) provides, in pertinent part, that all parties to an adjudicatory proceeding "shall be given reasonable notice of such hearing, which . . . shall include . . . a statement of the legal authority and jurisdiction under which the hearing is to be held" (see 12 NYCRR 701.4 [a] [2]). Although the notice of hearing did not expressly state that the library was a public agency under Labor Law § 230 (3), it cited the provisions of Labor Law § 235 and stated that an investigation was commenced "to determine whether [Executive Cleaning] complied with the requirements of [Labor Law] [a]rticle 9 . . . to pay or provide the prevailing rates of wages and supplements to building service employees employed in the performance of a public building service contract with [the library]" (emphasis added). This description was "reasonably specific . . . and thus sufficient to apprise . . . petitioners of the charges against them [so as] to allow for the preparation of an adequate defense" (Matter of D & D Mason Contrs., Inc. v Smith, 81 AD3d 943, 943 [2011], lv denied 17 NY3d 714 [2011]; see Matter of Block v Ambach, 73 NY2d 323, 333 [1989]; Matter of Zlotnick v City of Saratoga Springs, 122 AD3d 1210, 1211-1212 [2014]). Moreover, the notice of hearing expressly stated that the Department commenced an investigation upon being "advised of a complaint by an [Executive Cleaning] employee . . . alleging that [Executive Cleaning] failed to pay the proper prevailing wages and supplements for work performed in furtherance of the [c]ontract." In any event, an employee complaint is not required for the Department to commence an investigation under Labor Law article 9 (see Labor Law § 235 [1]), and the failure to [*3]protest underpayments does not vitiate an employee's right to recover wages in accordance with the prevailing wage law (see Labor Law § 236). As such, we conclude that the notice of hearing sufficiently set forth the basis of the Department's jurisdiction.
That said, we agree with petitioners that the contract at issue is not subject to the prevailing wage provisions of Labor Law article 9. NY Constitution, article I, § 17 provides, as relevant here, that "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, . . . shall . . . be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used." This constitutional mandate is implemented in Labor Law article 8, which requires the payment of prevailing wages to "laborers, work[ers] or mechanics" performing construction-like labor in connection with certain public work contracts (Labor Law § 220 [3] [a]; see De La Cruz v Caddell Dry Dock & Repair Co., Inc., 21 NY3d 530, 535 [2013]; Matter of New York Charter School Assn. v Smith, 15 NY3d 403, 407, 412 [2010]).
In 1971, the Legislature enacted article 9 of the Labor Law, which extended such prevailing wage protections to certain types of service contracts (see Labor Law § 231 [1]; Matter of Murphy's Disposal Servs., Inc. v Gardner, 103 AD3d 1015, 1016 [2013]). In particular, Labor Law § 231 (1) provides that "[e]very contractor shall pay a service employee under a contract for building service work a wage of not less than the prevailing wage in the locality for the craft, trade or occupation of the service employee." Building service work means "work performed by a building service employee" (Labor Law § 230 [2]), which, in turn, means "any person performing work in connection with the care or maintenance of an existing building . . . for a contractor under a contract with a public agency which is in excess of [$1,500]" and expressly encompasses "building cleaner[s]" (Labor Law § 230 [1] [emphasis added]).[FN3] A public agency is defined as "the state, any of its political subdivisions, a public benefit corporation, a public authority or commission or special purpose district board appointed pursuant to law, and a board of education" (Labor Law § 230 [3]).
As libraries are not expressly listed in that definition, the question distills to whether they are encompassed within one of the specifically-enumerated categories. Resolution of that question requires an accurate assessment of the nature of the library at issue. Education Law § 253 delineates two main types of libraries — public libraries and association libraries. Public libraries, of which there are multiple varieties in New York, are "established for free public purposes by official action of a municipality or district or the [L]egislature, where the whole interests belong to the public" (Education Law § 253[*4][2]). Once established by the municipality, school district or Legislature pursuant to the procedures set forth in Education Law § 255, public libraries then receive a charter from the Board of Regents — the head of the Department of Education (see NY Const, art V, § 4) — creating their corporate existence (see Education Law § 216). By statute, public libraries established by school districts are managed by a Board of Trustees (see Education Law § 260 [1]), whose members are "elected by the legal voters in the same manner as trustees are elected in the school district which established said library" (Education Law § 260 [2]). Association libraries, by contrast, are more private in nature, as they are "established and controlled, in whole or in part, by a group of private individuals operating as an association, close corporation or as trustees under the provisions of a will or deed of trust" (Education Law § 253 [2]).[FN4]
Here, the library's bylaws state that it was "created under a charter granted under . . . Education Law [§ 253] by the Board of Regents (or Secretary of State) of the State of New York."[FN5] The "Governance and Budget" page of the library's website — a copy of which is included in the record — lists the library as a "School District Public Library" that is governed by a Board of Trustees whose members are elected by the school district's residents. That website page notes that the library "is chartered to serve the residents of the Ossining School District, which encompasses the Village and Town of Ossining (including part of Briarcliff Manor), and parts of New Castle and Yorktown." The library receives 98% of its funding through local taxes and presents its budget to the district's residents on an annual basis (see Education Law § 255 [1]). According to its bylaws, the library's purpose "is to provide easy and equal access to the broadest range of information and ideas of humanity in order to meet the educational and intellectual needs of the diverse members of our community." Given the purpose for which the library functions, the manner in which it is governed and the method by which it is funded, substantial evidence supports the Commissioner's determination — impliedly rendered through adoption of the Hearing Officer's findings — that the library is a "public library" within the meaning of Education Law §§ 253 (2) and 255 (1), rather than an "association library."
Based upon this finding, the Hearing Officer concluded that the library — a public entity "created through the school district" — necessarily constituted a public agency within the meaning of Labor Law § 230 (3). That finding, however, does not complete the analysis, as Labor Law § 230 (3) includes only seven types of public entities within its reach. Once established by official action of the municipality in accordance with the procedures set forth in Education Law § 255, a public library's Board of Trustees must, within one month after taking office, apply [*5]to the Board of Regents for a charter (see Education Law § 261). Public libraries, like all entities chartered by the Board of Regents, have a defined corporate existence as education corporations (see Education Law § 216-a; General Construction Law § 66 [6]; Matter of Beers v Incorporated Vil. of Floral Park, 262 AD2d 315, 315-316 [1999]), which is not one of the specified public entities listed in Labor Law § 230 (3) (see Matter of M.G.M. Insulation, Inc. v Gardner, 20 NY3d 469, 475 [2013]; Matter of New York Charter School Assn. v Smith, 15 NY3d at 409). The Department argues that the library's status as an education corporation does not preclude it from also being considered a municipal corporation and, consequently, a political subdivision of the state (see General Municipal Law § 100 [1]). In support of that proposition, the Department relies on Bovich v East Meadow Pub. Lib. (16 AD3d 11, 19 [2005]), wherein the Second Department held that a public library's status as an education corporation did not, in and of itself, preclude it from also being considered a "variety of municipal corporation entitled to the protection of the notice of claim requirements of General Municipal Law §
50-i" (id. at 19 [emphasis added]). The Second Department was not assessing the prevailing wage law when it rendered that determination. More importantly, the Court of Appeals has since rejected the proposition that an entity may be considered the "functional equivalent" of a public agency for prevailing wage purposes (Matter of M.G.M. Insulation, Inc. v Gardner, 20 NY3d at 475; Matter of New York Charter School Assn. v Smith, 15 NY3d at 410). Accordingly, we do not view Bovich as persuasive.
Although we are mindful that the prevailing wage law "is to be interpreted with the degree of liberality essential to the attainment of the end in view" (Bucci v Village of Port Chester, 22 NY2d 195, 201 [1968] [internal quotation marks and citation omitted]), that mandate does not permit an overly-broad reading of the statute that expands its reach to noncovered entities (see generally Matter of M.G.M. Insulation, Inc. v Gardner, 20 NY3d at 474; Matter of New York Charter School Assn. v Smith, 15 NY3d at 410). The library at issue undoubtedly performs a public function and is closely intertwined with the school district that it serves, but it is not itself "a municipal corporation, school district, district corporation [or] board of cooperative educational services" — the entities that are considered to be "[p]olitical subdivision[s]" of the state for purposes of public contracts (General Municipal Law § 100 [1]; see General Construction Law § 66 [2]).[FN6] By statute, an "education corporation" and a "school district" are separately defined, indicating "that they are mutually exclusive" (Matter of East Meadow Union Free School Dist. v New York State Div. of Human Rights, 65 AD3d 1342, 1343 [2009], lv denied 14 NY3d 710 [2010]). An "education corporation" is a type of [*6]corporation formed for reasons "other than for profit" (General Construction Law § 65 [c] [2]), whereas a "school district" is a type of "municipal corporation" (General Construction Law § 66 [1], [2]). Reflecting its status as a distinct entity, the library's Board of Trustees is vested with independent decision-making authority and operational control (see Education Law § 226 et seq.). Nor do we view the library as "operat[ing] a public improvement" so as to be considered a public benefit corporation within the embrace of Labor Law § 230 (3) (General Construction Law § 66 [4]; see Matter of New York Pub. Lib. v New York State Pub. Empl. Relations Bd., 45 AD2d 271, 283 [1974], affd 37 NY2d 752 [1975]; but see County of Erie v Board of Trustees of Buffalo & Erie County Pub. Lib., 62 Misc 2d 396, 400 [Sup Ct, Erie County 1970], affd 35 AD2d 782 [1970], lv denied 28 NY2d 483 [1971]), or as constituting any of the other public entities included within Labor Law article 9. Consequently, we hold that the library at issue is not a public agency within the meaning of Labor Law § 230 (3).
As Executive Cleaning's contract with the library is not subject to the prevailing wage provisions of Labor Law article 9, the Commissioner's determination must be annulled. In light of our determination, petitioners' remaining contentions are academic. However, because petitioners' request for declaratory relief is not authorized in a proceeding transferred pursuant to CPLR 7804 (g), we sever that part of the matter and remit it to Supreme Court for entry of an appropriate judgment (see Matter of Paladino v Board of Educ. for the City of Buffalo Pub. Sch. Dist., 183 AD3d 1043, 1052 [2020]).
Clark, Mulvey, Pritzker and Colangelo, JJ., concur.
ADJUDGED that (1) the action for declaratory judgment is severed and said matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision, and (2) the determination is annulled, without costs, and petition granted to that extent.



Footnotes

Footnote 1: The record establishes that a payroll issue delayed the employee's payment, but the employee was eventually compensated.

Footnote 2: Petitioners previously commenced a combined CPLR article 78 proceeding and action for declaratory judgment against the library, its director, the Board of Trustees and the Commissioner seeking declaratory and monetary relief. Supreme Court (McDonough, J.) dismissed that proceeding/action in July 2018.

Footnote 3: There is no serious dispute here that the type of work performed falls within the reach of Labor Law article 9, as the hearing evidence amply established that the employees engaged in housekeeping, janitorial and cleaning services. Petitioners' argument that the prevailing wage provision of Labor Law article 9 does not apply because the subject contract did not involve construction-like labor misses the mark.

Footnote 4: Information obtained from the Department of Education's website — of which we may take judicial notice (see Matter of LaSonde v Seabrook, 89 AD3d 132, 137 n 8 [2011], lv denied 18 NY3d 911 [2012]) — reveals that association libraries also receive a charter from the Board of Regents upon being established pursuant to Education Law § 253 (see New York State Department of Education, Chartering a Public Library in New York State, Types of Public Libraries: A Comparison, http://www.nysl. nysed.gov/libdev/libs/pltypes.htm).

Footnote 5: We recognize that charters are actually granted by the Board of Regents pursuant to Education Law § 216, but the mistaken reference to Education Law § 253, which defines the terms "public" library and "association" library, does not alter our analysis.

Footnote 6: We note the existence of authority holding that, as education corporations, public libraries are generally considered to be "separate and distinct from the municipalit[ies] that created [them]" (Matter of Beers v Incorporated Vil. of Floral Park, 262 AD2d 315, 315-316 [1999]; see also Buffalo & Erie County Pub. Lib. v County of Erie, 171 AD2d 369, 372 [1991], affd 80 NY2d 938 [1992]; Matter of Queens Borough Pub. Lib. v Public Empl. Relations Bd. of State of N.Y., 104 AD2d 993, 994 [1984], affd 64 NY2d 1099 [1985]).